928 So.2d 414 (2006)
W.R., mother of E.R., R.R. and A.R., children, Appellant/Cross-Appellee,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee/Cross-Appellant.
No. 1D05-1486.
District Court of Appeal of Florida, First District.
April 21, 2006.
*415 Joyce Sibson Dove, Esq., Tallahassee, for Appellant/Cross-Appellee.
Acelo I. Pedroso, Child Welfare Attorney, Tallahassee, for Appellee/Cross-Appellant.
LEWIS, J.
Appellant/cross-appellee, W.R., the natural mother of E.R., R.R., and A.R., seeks review of an order terminating her parental rights to E.R. and denying termination as to R.R. and A.R. She raises three issues on appeal, only two of which warrant discussion. The Department of Children and Families ("Department") raises two additional issues on cross-appeal, neither of which warrants discussion. Appellant argues that the trial court erred in terminating her parental rights to E.R. pursuant to section 39.806(1)(c), Florida Statutes (2004), because the Department failed to prove that her continuing interaction with E.R. would threaten his life, safety, well-being, or health and because it failed to prove that termination was the least restrictive means of protecting E.R. from serious harm. Because we agree with appellant as to both arguments, we reverse and remand for further proceedings.
In January 2003, the trial court granted a shelter petition filed by the Department, which alleged that the children had been abused, abandoned, or neglected or were in imminent danger of illness or injury as a result of abuse, abandonment, or neglect because the trailer home in which the family lived had no running water or heat, *416 there was barely enough food to last one day while appellant would not receive more food stamps for over a week, the family slept on the cold, damp floor, there were only three blankets for the family to share, the children were cold and hungry, and appellant had violated a previously instituted safety plan. The Department subsequently filed a petition for dependency as to all three children, stating that it had received an abuse report containing the above allegations, that voluntary protective services had been unsuccessfully placed in the home, and that appellant had a learning disability, was unable to feed A.R. properly, and was unemployed and without income. In an order dated January 6, 2004, the trial court adjudicated the children dependent pursuant to appellant's consent.
On July 16, 2004, the Department filed a Petition for Termination of Parental Rights and Permanent Commitment for Purposes of Subsequent Adoption as to all three children, alleging that termination was appropriate pursuant to section 39.806(1)(e), Florida Statutes, because appellant failed to substantially comply with her case plan, that termination was appropriate pursuant to section 39.806(1)(c), Florida Statutes, because despite the services offered to appellant by the Department, she did not have the capacity to parent the children or to appreciate the circumstances that brought them into the Department's care to decrease any prospective abuse or neglect, and that termination was in the manifest best interests of the children.
During the termination hearing, Dr. Marie Hume Gilford, a clinical psychologist who evaluated both appellant and E.R., testified that appellant had a full-scale IQ of sixty-seven and was mildly mentally retarded; because of her limited cognitive skills, low IQ, and overall life situation, appellant had a limited ability to parent her children. Dr. Gilford had diagnosed E.R., whom she described as having significant behavioral and emotional problems, with combined type attention deficit hyperactivity disorder, adjustment disorder with disturbance of conduct, probable sexual abuse of child victim, and borderline intellectual functioning. She did not believe that any normal parent could handle E.R.'s problems and, thus, had recommended that he be considered for hospitalization. Dr. Gilford had no information suggesting that appellant was sexually abusive and stated that Developmental Disability services could be helpful to a person with appellant's abilities and that she could learn parenting skills.
Jann Tucker-Pettway, the Guardian Ad Litem ("GAL") for all of the children, testified on direct examination that she did not think that appellant could meet the needs of E.R., that she was not aware of any suitable custody arrangement with a relative other than appellant, and that appellant did not have the ability to provide the children with proper food, clothing, supervision, or medical care. She further testified that E.R. was adoptable but needed to be in a two-parent home where he was the youngest or only child that could provide the level of care required for his issues. On cross-examination, she testified that E.R. was not adoptable unless a "very, very special family" was found, that E.R. wanted to continue visiting with appellant, and that appellant visited the children for an hour each week and loved them very much. Although E.R. was in a level-two foster home at the time of the hearing, he could be institutionalized permanently as he had begun making suicidal threats and had been Baker Acted.
Appellant testified that she loved her children and that she could take care of R.R. in her home because she had no *417 problem with her. However, she acknowledged that both E.R. and A.R. needed "stronger help than [she could] give [them]." She believed that she could take care of E.R. after he received additional treatment and got better if she could obtain additional financial assistance.
After the conclusion of closing arguments, the trial court orally pronounced that, as to E.R., there was clear and convincing evidence that termination was in his best interest and that the Department had shown that appellant was unable to parent him or ever assume custody of him again. It reasoned that E.R. had such overwhelming psychological, emotional, and behavioral problems that appellant could not overcome while attempting to raise two other children, that E.R. would never get the care he needed from appellant, and that he needed a special environment and a family with the resources to take care of him. The trial court also noted that it "would be afraid for [E.R.] to grow up in the same house with the two sisters." As to R.R. and A.R., the trial court stated that it did not feel that "we've tried everything we can with [appellant]" and, thus, that it would not terminate appellant's parental rights as to them. The trial court found that the Department had not done anything malicious but that appellant deserved another chance before her parental rights as to R.R. and A.R. were terminated and concluded that the Department had failed to prove that termination was in the best interests of those children.
It was not until after the Department's counsel advised the trial judge that his termination as to E.R. had to reflect a finding as to which statutory ground justified termination of appellant's rights as to E.R. that the trial court stated that the ground provided in section 39.806(1)(c) fit better than the case plan failure ground because appellant was incapable of taking care of E.R.'s needs. The trial court subsequently addressed the factors to be considered in determining whether termination was in E.R.'s best interest pursuant to section 39.810, Florida Statutes (2004). In considering the love, affection, and emotional ties between E.R. and his parents, siblings, and other relatives and the degree of harm that would result from termination, the trial court stated, "I think if you balance out the fact that we're terminating [E.R.] in the interest of the two girls and the degree of harm that him being in the house might do to these other two children, I think it answers that question." Further, the trial court found that although E.R. may never find a home, he needed specialized care that appellant could not provide and that it did not think that E.R. was stable or would become more stable in foster care.
In its written order on the termination petition, the trial court again found that termination of appellant's parental rights as to E.R. was warranted pursuant to section 39.806(1)(c) and denied termination of appellant's rights as to R.R. and A.R. The order states in part that it was apparent that appellant loved all of her children but there was a great difficulty in trying to manage all three of the children with E.R. in the home, that there was a clear pattern of appellant's inability to assume physical custody of or parent E.R., that the termination of parental rights as to E.R. outweighed the benefits gained from not terminating the rights as to him, and that there was a high likelihood that E.R. would require long-term specialized care and was not adoptable at the time the order was issued. Thus, the trial court terminated appellant's rights as to E.R., committed E.R. to the care and custody of the Department for the purpose of subsequent adoption, readjudicated R.R. and A.R. dependent, and ordered that the Department *418 provide appellant with a new case plan for reunification with the latter two children that included tasks addressing anger management and appellant's developmental disability. This appeal followed.
Each of the elements required for termination of parental rights must be established by clear and convincing evidence. § 39.809(1), Fla. Stat. (2004). A trial court's finding that evidence is clear and convincing is not to be overturned unless it may be said as a matter of law that no one could reasonably find the evidence to be clear and convincing. C.W. v. Dep't of Children & Families, 814 So.2d 488, 492 (Fla. 1st DCA 2002); see also N.L. v. Dep't of Children & Family Servs., 843 So.2d 996, 999 (Fla. 1st DCA 2003) (stating that a finding that evidence is clear and convincing enjoys a presumption of correctness and will not be overturned on appeal unless clearly erroneous or lacking in evidentiary support).
Section 39.806(1)(c), Florida Statutes (2004), provides that the Department, the GAL, or any person with knowledge of the facts may petition for the termination of parental rights under the following circumstances:
When the parent or parents engaged in conduct toward the child or toward other children that demonstrates that the continuing involvement of the parent or parents in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child irrespective of the provision of services. Provision of services may be evidenced by proof that services were provided through a previous plan or offered as a case plan from a child welfare agency.
To terminate parental rights pursuant to section 39.806(1)(c), three sequential evidentiary requirements must be met: (1) the trial court must find that the child's life, safety, or health would be threatened by continued interaction with the parent regardless of the provision of services, meaning that the provision of services would be futile or the child would be threatened with harm despite any services provided, (2) the Department must prove that there is no reasonable basis to believe that the parent will improve, and (3) the Department must show that termination is the least restrictive means of protecting the child from serious harm. M.H. v. Dep't of Children & Families, 866 So.2d 220, 222-23 (Fla. 1st DCA 2004); see also In re G.C.A., 863 So.2d 476, 479 (Fla. 2d DCA 2004).
Appellant argues that the Department failed to prove that her continued interaction with E.R. would threaten his life, safety, well-being, or health by clear and convincing evidence. We agree that the record is devoid of evidence that appellant's continued involvement in a relationship with E.R. would threaten or harm him in any manner and, thus, conclude that no person could reasonably find that the evidence clearly and convincingly established that termination of appellant's parental rights to E.R. pursuant to section 39.806(1)(c), Florida Statutes (2004), was warranted. Although it is clear that returning any of the children to appellant's custody would have been improper, appellant's inability to parent E.R. and provide him with his every need does not mean that her continued interaction with him, in the form of visitation and telephone conversations, would threaten his life, safety, well-being, or health. The fact that appellant does not have the financial resources to provide E.R. with the specialized or institutionalized care that he requires is not a sufficient ground for termination of parental rights. See T.C.B. v. Fla. Dep't of Children & Families, 816 So.2d 194, 197-98 *419 (Fla. 1st DCA 2002) (stating that parental rights cannot be terminated simply because the parent is poor, uneducated, and without sufficient financial resources to care for her children in the manner the Department deems advisable or because she has not been a model parent); see also Padgett v. Dep't of Health & Rehabilitative Servs., 577 So.2d 565, 571 (Fla.1991) (stating that factors related to a parent's lack of financial resources cannot support permanent termination of parental rights). Furthermore, the trial court failed to explain, and we do not see, how continued interaction with appellant would threaten E.R.'s life, safety, well-being, or health but would pose no threat to R.R. or A.R. Additionally, the trial court's findings regarding E.R. demonstrate that the trial court largely based its termination of appellant's parental rights as to him on his unique behavioral and psychological problems and on the effect that living with him might have on R.R. and A.R., neither of which is a sufficient ground for termination.
Appellant also argues that the trial court erred in terminating her parental rights to E.R. because the Department failed to prove that termination was the least restrictive means of protecting the child. We agree. Because parental rights constitute a fundamental liberty interest, the Department must establish that termination is the least restrictive means of protecting the child from serious harm. Padgett, 577 So.2d at 571. "The least restrictive means test in the context of termination of parental rights requires those measures short of termination be utilized if such measures will permit the safe reestablishment of the parent-child bond." M.H., 866 So.2d at 223.
As appellant asserts, there is no indication in the record that terminating appellant's parental rights as to E.R. was the least restrictive means of protecting him from harm. Although the trial court's findings that there were no suitable relative placements available for E.R. and that his father was deceased are supported by the evidence, the trial court also found that there was a high likelihood that E.R. would require long-term specialized care and that he was not adoptable at the time the order terminating appellant's parental rights was issued. The latter findings are supported by Dr. Gilford's testimony that she did not believe that any normal parent could handle E.R.'s problems and the GAL's testimony that E.R. would not be adoptable unless a very special family was found and that he could be permanently institutionalized because he had begun making suicidal threats and had been Baker Acted. Additionally, the trial court found that the evidence did not demonstrate that E.R. had an ability to form a bond with a parental substitute or that a relationship of any depth existed between E.R. and his custodian. As such, it does not appear that E.R. could be placed for adoption until his psychological and behavioral condition substantially improved. The termination order's sole effect on E.R. was to sever his contact with appellant. Because appellant visited E.R. weekly and there was no evidence indicating that such visitation threatened E.R.'s life, safety, well-being, or health, we conclude that termination of appellant's parental rights was not the least restrictive means available to the trial court. See L.B. v. Dep't of Children & Families, 835 So.2d 1189, 1196 (Fla. 1st DCA 2002) (finding that termination of the appellant's parental rights was not the least restrictive means of protecting the children where they would not be placed for adoption because the trial court dismissed the petition for termination of the father's parental rights and, thus, the sole effect of the order terminating the appellant's parental rights was to sever the contact between the children and *420 the appellant, who visited regularly, and there was no evidence that such visitation would harm the children).
Accordingly, we REVERSE the trial court's order to the extent that it terminates appellant's parental rights to E.R. and REMAND for further proceedings consistent with this opinion.
KAHN, C.J., and POLSTON, J., concur.