BLACK, Judge.
P.P., the mother, appeals an order placing her child, K.M., into a permanent guardianship and terminating protective supervision. Because the Department of Children and Family Services (DCFS) did not properly notify the mother that the hearing in this case was a permanent guardianship hearing and because the mother was not afforded an opportunity to present evidence at an evidentiary hearing prior to the child’s placement in permanent guardianship, we reverse and remand this case for an evidentiary hearing.
I. Background Facts
On February 3, 2010, DCFS filed a petition for adjudication of dependency against P.P. and I.M., the father, due to the parents’ prescription drug use and inadequate supervision of K.M., the child.[1] DCFS sheltered K.M. for one day, and then the court entered an order returning K.M. to her mother and father’s custody on the condition that the parents cooperate with the child protection investigator. A little over a week later, the parents consented to an adjudication of dependency and a ease plan was initiated. In June 2010, DCFS again sheltered K.M. because the mother and father were arrested. The court later ordered a change of custody, and K.M. was placed in the care of the mother’s cousin, D.R.
After DCFS sheltered K.M. the second time, there were three judicial review hearings. The mother was found noncom-pliant at the first review, except for the portion of time that she was incarcerated; she was found partially compliant at the second review; and she was found partially compliant at the third review. A general magistrate conducted all three reviews, and the court issued orders adopting all three of the magistrate’s report and recommendations.
In the report and recommendation from the third review, the magistrate noted that DCFS had filed an amended case plan on June 13, 2011, with a concurrent goal of reunification and permanent guardianship and an overall goal compliance expiration date of December 8, 2011. The amended case plan was signed by the mother, was accepted and approved in the report and recommendation, and was adopted by an order of the court. The report and recommendation from the third review also noted that the next judicial review hearing was scheduled for October 27, 2011; however, there was nothing in the report and recommendation that indicated the October 27, 2011, hearing was regarding permanent guardianship.
On September 23, 2011, DCFS filed a document titled, “Judicial Review Social Studies [sic] Report/Case Plan Update/Permanency Review Social Studies Report and Notice of Hearing.” The judicial review social services report stated that the mother was found noncompliant with certain aspects of her case plan at the last judicial review and that “[a] permanency staffing [would] be held on 10/17/11 to discuss closing [KM.’s] case permanent guardianship.” Under the heading of the report, there was a statement that read, “This is also a Permanency Review,” but there was no date listed for a permanency hearing under the judicial review section. The notice of hearing attached to the report indicated that the hearing on October *558 27, 2011, was regarding a “Judicial Review/Case Plan Update.” The record contains no other notices indicating that the October 27, 2011, hearing was a hearing regarding permanent guardianship.
At the beginning of the October 27, 2011, hearing, DCFS recited the mother’s case plan goals, stating that she was either partially compliant with the goal or non-compliant. However, the witnesses did not present testimony in a format where they were called for direct or cross-examination; they simply spoke when addressed by the magistrate. And the magistrate did not admit any evidence into the record.
Toward the middle of the hearing, DCFS made an ore tenus motion to terminate DCFS supervision of K.M. and place her in permanent guardianship with the maternal cousin, D.R. Specifically, DCFS argued:
DCFS ATTORNEY: And then we are asking to close permanent guardianship for [K.M.]
MOTHER’S ATTORNEY: And we’d be objecting to that. There is no way the mother wants to close the case, permanent guardianship. She’s working on her case plan.
DCFS ATTORNEY: You had set this for a very short [judicial review] and listed out explicitly what the mother needed to do by certain dates, and the majority of that was not done.
The magistrate then continued the hearing, asking more questions about whether the mother complied with her case plan. After each of the court’s questions, either DCFS or the case manager’s supervisor answered regarding the mother’s noncompliance. The mother was not able to cross-examine the witnesses regarding their testimony; however, she did voice her contentions about the accuracy of the witnesses’ testimony.
Subsequently, the magistrate asked if there was “[a]ny other evidence or testimony!;,]” and then the magistrate made an oral finding that KM. should be placed in permanent guardianship. At the conclusion of the hearing, DCFS waived its right to file any exceptions to the report, and the mother’s attorney stated: “I’m not going to waive. I mean I guess I’ll waive, but I know we’ll file an appeal, but I don’t think I’ll file exceptions.” The magistrate then asked if she was going to waive or not. The attorney stated: “Well, I don’t think — I’m not going to file exceptions. I’m sure she’s going to want me to file those (indiscernible) appeal.”
Following the hearing, the magistrate issued a report and recommendation, finding the mother partially compliant with her case plan and recommending that K.M. be placed in permanent guardianship with the mother’s cousin and have weekly visitation with the mother. The trial court issued three orders following the magistrate’s report and recommendation: an order of judicial review, approving the findings of the magistrate’s report and recommendation from the October 27, 2011, hearing; an order placing the child in a permanent guardianship and terminating protective services; and a separate order for the permanent guardian, issued pursuant to section 39.6221(3), Florida Statutes (2011).
II. Analysis
The mother asserts a two-prong, due process argument. First, she asserts that DCFS did not provide her proper notice for the permanency hearing. Second, she contends that she was entitled to an evi-dentiary hearing and not simply a judicial review hearing. DCFS contends that the language in the judicial review social services report and the amended case plan properly notified the mother that the Octo *559 ber 27, 2011, hearing was a permanency hearing. Additionally, although DCFS concedes that the record does not show any witnesses were sworn prior to the hearing, DCFS maintains that the record could be supplemented to show that witnesses were sworn at 1:00 p.m. for the 2:00 p.m. hearing. DCFS also contends that the mother had the opportunity to present evidence and witnesses and to cross-examine DCFS’s witnesses at the hearing. Moreover, DCFS argues that following the magistrate’s report and recommendation, the mother did not properly set the matter before the trial court for an evidentiary hearing.
We do not agree that the State properly noticed the mother for the permanency hearing. Section 39.621(3)(a) states:
At least 3 business days before the permanency hearing, the department shall file its judicial review social services report with the court and serve copies of the report on all parties. The report must include a recommended permanency goal for the child, suggest changes to the case plan, if needed, and describe why the recommended goal is in the best interest of the child.
(Emphasis added.) Here, the judicial review social services report filed on September 23, 2011, states that a discussion regarding permanent guardianship was going to be held on October 17, 2011; thus, the State had not determined a recommended permanency goal for the child at the time it filed its September 23, 2011, report, and there were no other reports or recommendations filed prior to the October 27, 2011, hearing. Additionally, although there was a statement under the heading of the report that read, “This is also a Permanency Review,” the report did not contain a date for the permanent guardianship hearing. In fact, at the October 27, 2011, hearing, the mother still had December 8, 2011, listed as her overall compliance date on her case plan; thus, she still had a little over a month to complete her case plan. The report also did not state why permanent guardianship would be in the best interest of the child. Because DCFS failed to notice the mother regarding a permanent guardianship hearing, we find DCFS failed to comply with the statute and due process. See A.L. v. Dep’t of Children & Families, 53 So.3d 324, 328 (Fla. 5th DCA 2010) (“The procedures utilized in a dependency action must comport with due process principles.”).
However, even if we could construe the judicial review social services report as providing proper notice, the mother was still denied due process because the October 27, 2011, hearing was not an evidentia-ry hearing. See T.H. v. Dep’t of Children & Family Servs., 928 So.2d 1291, 1294 (Fla. 2d DCA 2006) (holding that the magistrate’s recommended order terminating temporary supervision and placing the child in permanent guardianship was not supported by competent, substantial evidence because the magistrate failed to hold an evidentiary hearing and that the failure to hold an evidentiary hearing violated the father’s due process rights). Although DCFS argues that all parties and witnesses were sworn in prior to the hearing, this is not indicated in the record, and even if it was, there were no witnesses called, there was no direct or cross-examination of any of the witnesses, and there was no evidence admitted. Based on the record before us, it is clear that the judicial review hearing was not an evidentiary hearing.
It is also clear from the record that the mother was surprised by the State’s oral motion to place the child in permanent guardianship and that the mother properly objected to the oral motion during the hearing. Although DCFS contends that *560 the mother’s failure to file exceptions to the magistrate’s report and recommendation waived the issues she now raises on appeal, we do not agree. Cf. Aspsoft, Inc. v. WebClay, Inc., 983 So.2d 761, 764-65 n. 1 (Fla. 5th DCA 2008) (concluding that under Florida Rule of Civil Procedure 1.490(h), which is worded similarly to Florida Rule of Juvenile Procedure 8.257(f)— the juvenile rule of procedure on filing exceptions to a magistrate’s report — the appellant did not waive a claim of error by failing to file exceptions to the general magistrate’s report).
The mother also argues that the trial court’s order failed to make the proper findings pursuant to section 39.6221(2)(a)-(f). However, since we conclude the mother’s due process rights were violated, there is no need to address the mother’s second issue concerning the trial court’s findings.
Because the mother did not receive proper notice and because the trial court failed to conduct an evidentiary hearing, we reverse and remand for an evidentiary hearing.
Reversed and remanded for further proceedings.
LAROSE and CRENSHAW, JJ., Concur.

. We note that the record indicates there was another child involved in this case. However, it appears that the other child, S.F., turned eighteen on November 30, 2011, and is not a party to the order of permanent guardianship in this appeal. Accordingly, the notice of appeal indicates that the appeal is only in the interest of K.M., and we address only the issues pertaining to K.M.