ALTENBERND, Judge.
J.B., the father, appeals an order placing his two children in a permanent guardianship and terminating protective supervision. This case involves essentially the same error that occurred in P.P. v. Dep’t of Children & Family Servs., 86 So.3d 556 (Fla. 2d DCA 2012). Although the decision reached in the order on appeal might ultimately prove to be the best outcome for one of the children, J.B. was entitled to adequate notice and an opportunity to prepare for the permanency hearing on these issues. Moreover, the procedure used did not result in an adequate evidentiary hearing to establish the factual issues necessary to support an order of permanent guardianship. The trial court seemed to be confused as to the options that would be available to the parents after the permanent guardianship was established and protective supervision was terminated. Accordingly, we reverse and remand for further proceedings.
The Department commenced a dependency proceeding in this case in mid-2012 against both the father and the mother concerning their two children, a four-year-old daughter and a fourteen-year-old son. The mother apparently had addiction issues and was not then living in the marital home. At the time the proceeding commenced, the father had health issues that prevented him from driving. He allegedly was walking the young daughter three miles each way to daycare. The children were declared dependent in July 2012 and placed in non-relative foster care.
At the time of a review in December 2012, both parents were detained or incarcerated. By the time of a status review in February 2013, it was clear that the mother struggled with addiction issues, the father was partially compliant with his case plan, and the teenage son was emotionally detached from his parents. In the order addressing the matters that»arose at the February status review, the court set the case for a “judicial review” on June 18, 2013.
Each parent had not fulfilled a case plan by the time of the scheduled judicial review in June. The day before the hearing, the Department apparently abandoned the goal of reunification and decided to seek a permanent guardianship. The hearing, however, was noticed under Florida Rule of Juvenile Procedure 8.415 as a judicial review; it was not noticed as a permanency hearing under Florida Rule of Juvenile Procedure 8.425, much less as a permanency hearing at which the court was expected to enter a final permanency order. The Department filed nothing before the hearing to reveal its change of plans. We have located no motion or other appropriate filing in this record seeking to establish a permanent guardianship and terminate supervision.
The transcript of the hearing in mid-June reflects that the court initially had discussions with the mother about her limited progress on her case plan. The court had a lengthy discussion with the mother *755 about her need to complete a three-month residential program to overcome addiction if she wanted to regain custody of her children. The court confirmed with the Department that the mother could enroll “anytime” in this program. The court had a shorter discussion with the father about his progress on his case plan.
Following these discussions, the attorney for the Department announced that “[i]t would be the recommendation today to request a change of goal to permanent guardianship.” The attorney for the Department represented that the foster parents wanted to become the permanent guardians and had “completed the request for permanent guardianship.” The court file does not appear to contain any written request from the foster parents to become permanent guardians. They were at work, did not attend the hearing, and did not otherwise provide any evidence to support the order on appeal.
The attorney for the Department then represented that “if [the mother] decides to engage in her case plan and do her [drug rehabilitation program] and complete her case plan, she can certainly motion the Court to reopen her case for reunification.” At this stage in the hearing, the Department’s attorney knew that the Department wanted to obtain an order of permanent guardianship and a termination of supervision at this hearing. Presumably, she knew that the Department would not need to continue to work with either parent on a case plan or to provide attorneys to assist the parents in modifying the permanent guardianship. This court doubts that funding for the drug rehabilitation program would be provided to the parents after the entry of the order on appeal, but this file contains no evidence one way or the other as to this issue. Thus, the Department’s explanation of the status of this case to the court and to the parents at this point in the hearing appears to be inaccurate.
But at this stage in the hearing, both the trial judge and the father’s attorney reasonably believed that the Department merely wanted to change the recommended goal — not to proceed to terminate services at the end of the hearing. After additional discussion the trial court explained:
Okay. We’re going to change the goal to permanent guardianship with the non-relative today. That just means that you can still work your case plan. You both can still get the help you want. But, in this case, the non-relatives will be the custodians. Now, that’s a temporary situation. It could change.
At this point, the father himself objected that he did not understand why his mother could not have custody of the children. The trial judge asked the Department’s attorney whether that option had been explored, and she explained merely that the children had been in non-relative placement for over a year and the Department did not want to disrupt the placement. Although the foster parents were not in attendance at the hearing, the grandmother was. She attempted to make her own case for why she should have custody.
Following more discussion, the court again confirmed that it was changing the goal to permanent guardianship but that this would be with “liberal visitation”' for the parents and grandparents. The parties then discussed ways to obtain more treatment for the father.
Forty-three pages into the .transcript the Department first explained that it actually wanted an order at the conclusion of this hearing establishing a permanent guardianship and a termination of supervision. The father’s attorney immediately objected, explaining that he was open to a change in goal but not to an order of *756 permanency. His surprise is palpable even on the face of the transcript. After asking a few questions and without any additional evidence, two pages later in the transcript the trial court decided to grant the Department’s motion.
Even at this point in the hearing, the trial court did not seem to understand the impact of its ruling. There was continued discussion on steps the father needed to take to expand his visitation. The father’s attorney renewed his objection and better articulated that he had had no notice that anything other than a change in goal might be addressed at this hearing. The trial court overruled the objection, turned to the Department’s attorney, and stated: “All right. State, when are we coming back? When do we need to come back?” The Department’s attorney explained to the court: “We do not need to come back, Your Honor.”
The order placing the two children in a permanent guardianship and terminating protective supervision appears to be a standard form. It contains standard con-clusory language to support the decision to create a permanent guardianship. For example, it finds that “the proposed permanent guardian is suitable and able to provide a safe and permanent home for the children” and that “the proposed permanent guardian has made a commitment to provide for the children until the children reaches [sic] the age of majority and to prepare the children for adulthood and independence.” These findings, of course, were made without any evidence from the proposed permanent guardians, who did not attend the hearing.
More than a year before this hearing this court reversed another judge in the Sixth Circuit when the Department did not obey section 39.621(3)(a), Florida Statutes (2011). See P.P., 86 So.3d 556. Despite the fact that the father’s appellate counsel cited P.P. in the initial brief, the Department has not even acknowledged the existence of this controlling case. As we stated in P.P.:
We do not agree that the State properly noticed the mother for the permanency hearing. Section 39.621(3)(a) states:
At least 3 business days before the permanency hearing, the department shall file its judicial review social services report with the court and serve copies of the report on all parties. The report must include a recommended permanency goal for the child, suggest changes to the case plan, if needed, and describe why the recommended goal is in the best interest of the child.
Id. at 559.
In this case, the documents that the Department filed the day before the hearing do not even claim to be a permanency review, and even the judge did not understand it was intended to be a permanency hearing until the end of the hearing.
Section 39.6221, Florida Statutes (2012), authorizes a court to establish a permanent guardianship of a dependent child. But the statute clearly requires the trial court to first make a reasoned decision that reunification or adoption are not in the best interest of the child. See § 39.6221(1). Despite the language of the order, the court did not make that determination in this case and does not appear to have had a factual basis to have made such a determination. Subsection 39.6221(2) and rule 8.425(d) contain detailed requirements for the written order establishing a permanent guardianship. It is obvious that the legislature intends case specific explanations in such orders. Rule 8.425(d)(7) emphasizes the specific findings required when the permanent guardians *757 are not relatives. A form order to assist judges in granting a permanent guardianship may be appropriate but not at the omission of the information that the statute requires the trial court to specify. See § 39.6221(2); see also J.S. v. Dep’t of Children & Family Servs., 18 So.3d 712, 714 (Fla. 2d DCA 2009).
Subsection 39.6221(5) explains that the entry of a permanent guardianship requires the court to “discontinue regular review hearings” and it relieves the Department “of the responsibility for supervising the placement of the child.” The court does retain jurisdiction over the case to modify the order of guardianship. But the order of guardianship is a type of permanency order and, thus, the process to modify a permanent guardianship is performed under rule 8.430. The process is not simple, and at least under usual circumstances, the parent has no attorney to assist in the process. Accordingly, while a permanent guardianship interferes far less with a parent’s fundamental constitutional right to parent than does an order of termination, a permanent guardianship is still a very serious step that must be performed with care and a full measure of due process.
We reverse the order on appeal and remand for further proceedings consistent with this opinion.
CASANUEVA and KELLY, JJ., Concur.