LEWIS, C.J.
A.H., the mother, appeals the termination of her parental rights over K.H., her son, and argues that the trial court erroneously found that she abandoned the child and that termination was the least restrictive means of protecting the child from harm. The Department of Children and Families (“DCF”) concedes that the trial court erred by finding that termination of the mother’s parental rights was the least restrictive means to protect the child from harm. We agree and reverse without addressing the trial court’s finding of abandonment.
In May 2011, DCF took the then two-year-old child into protective custody and placed him in foster care. In July 2011, the trial court adjudicated the child dependent. In April 2012, the trial court created a permanent guardianship, with the foster mother serving as the child’s permanent guardian, and terminated supervision by DCF. In September 2013, the mother filed a motion to reopen the dependency case, wherein she sought to regain custody of the child. At the hearing on the mother’s motion, DCF opposed the reopening of the case, the trial court inquired about the appropriateness of adoption, and the court granted the mother’s motion for the sole purpose of DCF filing a petition for termination of parental rights. DCF subsequently filed such petition on the grounds that the parents abandoned the child, the parents failed to complete the case plan, adoption was the least restrictive means to achieve permanency, and the termination was in the child’s manifest best interest.
At the termination hearing, an expert psychologist testified in detail about his pre-adoptive psychological evaluation of the child. The child was very comfortable with and trustful of the permanent guardian, had “uniformly positive” interactions with her, referred to her as his mom, and appeared to have a very strong bond with her. The child had memory of the mother and was aware of his older brothers, but “his greatest sense of contentment, predictability and stability in his life was with [the permanent guardian].” The psychologist was not sure whether the child’s return to the parents would threaten his safety. While the child’s return to the parents could interrupt his emotional health, the psychologist could not say that with certainty. Separation from the permanent guardian could frighten the child, could lead to the reoccurrence of his reactive attachment disorder, would cause things to go badly for him for a while, and would not lead to any foreseeable benefit. However, the child did not exhibit any negative feelings toward the mother and seemed to enjoy the prospect of visiting with her, and the psychologist did not see any reason why the child could not form a bond with her.
The permanent guardian testified that she is not related to the child, who has been living with her since May 2011. The child loves the mother and is happy to visit with her, but he never cries or asks to see her. The child calls the permanent guardian “mom.” The child is doing very well in school, does not have to see a therapist, and engages in extracurricular activities. The permanent guardian is willing to adopt the child because he is a part of her family and she “couldn’t love him any more.” During the supervised visits, the mother never behaved or spoke inappropriately with the child and there was no indication that she was a danger to him. The child never asks to see the mother, but has expressed a desire to see his siblings. The permanent guardian believes that the child would like to maintain a relationship with the mother and his siblings.
*665 The child’s guardian ad litem (“GAL”) testified that the child is the top student in his class, is inquisitive and loving, and has a loving and caring relationship with the permanent guardian. The GAL wishes for the child to remain in the permanent guardian’s home. Although the parents are very remorseful about the case and love the child very much, they do not have the capacity to care for him to the extent that he would not be endangered if returned to them. That is so because even though the parents would not cause physical harm to the child, they are not “bonded to [the child] at all.... Emotionally and mentally it would be devastating to take him out of his home [with the permanent guardian].” The child is not able to express his wishes regarding adoption, “[b]ut he has stated that he would love to live with [the permanent guardian] until he is like 70 years old.” The child responds positively to the mother, but it is as if she were a distant family member. The GAL recommended termination of parental rights pursuant to the manifest best interest of the child so he could achieve permanency through adoption.
The trial court entered a final judgment terminating parental rights upon finding in relevant part that the parents engaged in the long-term abandonment of the child, it would be harmful to the child if he were removed from the permanent guardian’s care, there is little or no bond between the child and the parents, “termination of parental rights is the least restrictive means to achieve permanency for the child,” and termination is in the manifest best interest of the child. This appeal followed.[1]
To terminate parental rights, DCF must prove by clear and convincing evidence: “ ‘(1) the existence of one of the statutory grounds set forth in Chapter 39; (2) that termination is in the best interest of the child; and (3) that termination is the least restrictive means of protecting the child from harm.’ ” A.H. v. Fla. Dep’t of Children & Family Sens., 85 So.3d 1213, 1215-16 (Fla. 1st DCA 2012) (internal citation omitted). “Where the trial court’s findings that the evidence is clear and convincing are supported by competent substantial evidence, and the appellate court cannot say that no one could reasonably find such evidence to be clear and convincing, the finding will not be set aside on appellate review.” Id. at 1215.
Before a person may be deprived of the fundamental right to parent, DCF must prove that termination of parental rights is the least restrictive means of protecting the child from serious harm. G.H. v. Dep’t of Children & Families, 141 So.3d 984, 2014 WL 2927159 (Fla. 1st DCA June 30, 2014). That is, “ ‘the state must show by clear and convincing evidence that reunification with the parent poses a substantial risk of significant harm to the child,’ and that ‘termination of parental rights is the least restrictive means of protecting the child from harm.’ ” B.C. v. Fla. Dep’t of Children & Families, 887 So.2d 1046, 1053 (Fla.2004) (internal citations omitted). If DCF “fails to prove that there is significant risk of harm to the current child, or that there are no measures short of termination that could be used to protect the child from harm, then termination will not pass constitutional muster.” J.B. v. Dep’t of Children & Families, 107 So.3d 1196, 1202 (Fla. 1st DCA 2013). “[T]he least restrictive means test [is not] intended to preserve the parental bonds at the cost of a child’s future. Instead, this test requires that ‘those measures short of termination should be utilized if such measures can permit the safe reestablishment of the parent-child *666 bond.’ ” L.W. v. Dep’t of Children & Families, 71 So.3d 221, 224 (Fla. 4th DCA 2011); see also W.R. v. Dep’t of Children & Families, 928 So.2d 414, 419 (Fla. 1st DCA 2006) (same).
An order that creates a permanent guardianship is a type of permanency order that may be modified as set forth in Florida Rule of Juvenile Procedure 8.430. In re J.B., 130 So.3d 753, 757 (Fla. 2d DCA 2014) (citing section 39.6221(5), Florida Statutes, and explaining that the creation of a permanent guardianship requires the court to discontinue regular review hearings and relieves DCF of the responsibility to supervise the child’s placement). A permanency placement is intended to continue until the child reaches the age of majority and may not be disturbed absent a finding that the circumstances of the placement are no longer in the child’s best interest. Fla. R. Juv. P. 8.430 (2013). Upon a parent’s motion for reunification or increased contact with a child, the court must consider “the effect of the decision on the safety, well-being, and physical and emotional health of the child”; in doing so, the court must consider and address the parent’s compliance with the case plan, the circumstances causing the dependency and whether they have been resolved, the stability and length of the child’s placement, the child’s preference if the child is able to express one, the custodian’s recommendation, and the guardian ad litem’s recommendation. Id.) see also § 39.621(9)-(10), Fla. Stat. (2013).
In the present case, the record shows that the trial court has created a permanent guardianship for the child and there is no evidence that the mother’s irregular contact posed a harm to him. To the contrary, the evidence shows that the child has a strong bond with the permanent guardian and was doing very well in her care, yet he also enjoyed his visits with the mother and his siblings and wished to maintain a relationship with them. Given the circumstances of this case, DCF properly concedes that the trial court erred by finding that termination of the mother’s parental rights was the least restrictive means of protecting the child from harm.
Therefore, we REVERSE the termination of the mother’s parental rights.
BENTON and RAY, JJ., concur.

. In her initial brief, the mother indicated that the father has passed away.