*41
ON MOTIONS FOR REHEARING, REHEARING EN BANC, CLARIFICATION AND/OR CERTIFICATION

THOMAS, J.
Appellee, Department of Children and Families (DCF), has filed a Motion for Clarification, Rehearing and Rehearing En Banc, and the Guardian ad Litem (GAL) has filed a Motion for Rehearing, Rehearing En Banc, Clarification and/or Certification. We deny all of the motions except the motion for clarification, and withdraw our previous opinion of February 27, 2015, and substitute this opinion in its place.
Appellant (the Mother) appeals a final order terminating parental rights as to her two children. She challenges the court’s order which determined that termination was warranted under sections 39.806(l)(c) and 39.806(l)(e), Florida Statutes, that it was the least restrictive means of protecting the children from harm, and that it was in the children’s best interests. We affirm as to all but one of these contentions. We reverse the trial court’s ruling that termination was the least restrictive means of protecting the children from harm.

Factual Summary

Relevant to the issue of least restrictive means, the DCF presented evidence by a psychologist, Dr. Flynn, retained to conduct family therapy. Dr. Flynn testified that the children did not appear to be negatively affected by seeing the Mother only once a week, but he had concerns about the Mother’s ability to independently parent the children. Dr. Flynn opined that reunification would póse a significant risk of harm to the children’s well being, based largely on her lack of meaningful progress in improving her parenting skills, particularly concerning the children’s behavioral issues, and he did not feel there was any reasonable basis to believe that the Mother would improve with additional services. Dr. Flynn had no objection, however, in discharging the family from further therapy, because supervised visitation was safe to resume.
DCF’s case coordinator testified that, based on the GAL’s report, although the parents have a bond with the children, the GAL did not believe termination would harm the children, because the maternal aunt wished to adopt them and would allow contact with the Mother. Nevertheless, the GAL recommended terminating the Mother’s parental rights. Much of the rest of the testimony from the various service providers centered on the Mother’s low cognitive abilities, her lack of progress in developing the skills and mindset necessary to safely parent the children, and their doubts that any further services would assist the Mother.
In its final order, the court found that DCF had satisfied the statutory requirements for terminating the Mother’s parental rights and that termination would be in the children’s manifest best interests. The court found that there was a bond between the children and the Mother, but that terminating the Mother’s parental rights would not harm the children, because the proposed adoptive aunt would allow contact between the children and their the Mother. Addressing the least restrictive means issue, the court found by clear and convincing evidence that “termination of parental rights is the least restrictive means to achieve permanency for the children because the children cannot be safely reunified with the parents today and the only option for permanency is adoption.” For this conclusion, the court pointed to the Mother’s lack of progress in remedying the issues that led to the shelter of the children, “which was her lack of appropriate parenting skills and physical abuse.”
*42 The court also found that, although Dr. Flynn opined the children would be safe in a supervised visitation setting, “the mere availability of a potential relative placement, especially one disclosed on the eve of trial on a petition for termination of parental rights,” did not render such a placement the least restrictive means.
The court also found that this court provided “additional guidance” on the issue of least restrictive means in A.H. v. Department of Children & Families, 144 So.3d 662 (Fla. 1st DCA 2014). The trial court found that A.H. “involved availability of a permanent placement plus the existence of a parent child relationship plus the existence of a less restrictive alternative to termination that would guard the child from serious harm.” (Emphasis in original.) The trial court found that, under the evidence here, “[although safety is secured for the children and alternative permanency options are available, there was no testimony as to the existence of any relationship between the children and their mother,” thus, “the test of A.H. is not met.”

Analysis

In termination of parental rights (TPR) cases, the standard of review is highly deferential. See N.L. v. Dep’t of Children & Families, 843 So.2d 996, 999 (Fla. 1st DCA 2003). “Where the trial court’s findings that the evidence is clear and convincing are supported by competent substantial evidence, and the appellate court cannot say that no one could reasonably find such evidence to be clear and convincing, the finding will not be set aside on appellate review.” Id. at 1000.
But “before parental rights in a child can be permanently and involuntarily severed, the state must show by clear and convincing evidence that reunification with the parent poses a substantial risk of significant harm to the child.” Padgett v. Dep’t of Health & Rehab. Sevs, 577 So.2d 565, 571 (Fla.1991). And “because parental rights constitute a fundamental liberty interest, the state must establish in each case that termination of those rights is the least restrictive means of protecting the child from serious harm.” Id. Section 39.810(1), Florida Statutes, provides that “the availability of a ... placement with a relative[] may not be considered as a ground to deny the termination of parental rights,” but the applicable test here is whether termination is the least restrictive means of protecting a child from serious harm, not, as the trial court erroneously found, the least restrictive means of achieving permanency. In seeking to achieve this goal, DCF is “obliged to ‘proceed in a narrowly tailored manner.’” G.H. v. Dep’t of Children & Families, 145 So.3d 884, 886 (Fla. 1st DCA 2014) (quoting N.S. & D.R. v. Dep’t of Children & Families, 36 So.3d 776, 778 (Fla. 3d DCA 2010)).
The Mother contends that the TPR order does not pass the least restrictive means test. She asserts that DCF argued, and the court ultimately found, that termination would not harm the children, because the aunt who offered to adopt the children would allow contact with the Mother. Further, the Mother notes that the court also found that Dr. Flynn opined the children would be safe in a supervised visitation setting with the Mother. In other words, the Mother persuasively argues that terminating her parental rights is not, under the circumstances here, the least restrictive method of protecting the children, because the trial court recognized that further contact between the Mother and the children will' not endanger the *43 children.[1] In fact, it is clear from the hearing transcript that the trial court also agreed with this reasoning, but was dissuaded from doing so based on its interpretation of this court’s decision in AH.
In AH., the child was placed in permanent guardianship. 144 So.3d at 664. The parents moved to reopen the dependency case for the purpose of gaining reunification, and the court granted the motion so that DCF could file a TPR petition. Witness testimony established that the child had formed a strong bond with the foster parents, who wanted to adopt the child. The testimony also established that the child had little or no bond with the biological parents, and that they “do not have the capacity to care for him to the extent that he would not be endangered if returned to them,” because of the emotional and mental impact on the child if removed from his permanent guardians’ home. Id. at 664-65. The GAL testified that, although the “child responds positively to the mother ... it is as if she were a distant family member.”[2] Id. at 665. “The trial court entered a final judgment terminating parental rights upon finding in relevant part that the parents engaged in the long-term abandonment of the child, it would be harmful to the child if he were removed from the permanent guardian’s care, there is little or no bond between the child and the parents” and that termination was the “least restrictive means to achieve permanency” and in the “manifest best interest of the child.” Id. at 665.
This court reversed, agreeing with DCF’s concession that termination of the mother’s parental rights was not “the least restrictive means of protecting the child from harm.” Id. at 666. The court also found that there was “no evidence that the mother’s irregular contact posed a harm to [the child]. To the contrary, the evidence shows that the child has a strong bond with the permanent guardian and was doing very well in her care, yet he also enjoyed his visits with the mother and his siblings and wished to maintain a relationship with them.” Id.
Here, the learned trial judge found that the evidence showed that “[although safety is secured for the children and alternative permanency options are available, there was no testimony as to the existence of any relationship between the children and their mother,” thus, “the test of A.H. is not met.” The trial court’s ruling is mistaken for two reasons. First, it is at odds with its own factual finding in its order that “[t]he children have a bond with their párents.” Second, the court misconstrued the decision in AH., in which this court held that TPR was not the least restrictive means of protecting the child from harm, despite the fact that there was *44 “little or no bond” between the child and his mother.
The GAL now argues that TPR is the least restrictive means of preventing harm to the children, because “continued interaction with the Mother would result in harm to the Children.” As we have already noted, this position is diametrically opposed to the position it took below in which it argued that the children would not be harmed by TPR, because their aunt would allow them to have contact with the Mother. It is also contrary to Dr. Flynn’s testimony that the children would not be harmed by supervised contact with the Mother.
We reject the GAL’s attempt to distinguish A.H. on the basis that it involved “a previously-established permanent guardianship that was disrupted for the sole purpose of terminating parental rights,” unlike the case here. The fact that the procedural posture of this case differs from Á.H. does not alter the State’s burden of persuasion: the State must prove by clear and convincing evidence that termination is the least restrictive means of protecting the children, and although the availability of a permanency option other than TPR is not a proper basis for denying TPR, this does not forestall utilizing such ah option should the State fail to meet its burden on the issue of least restrictive means.
In G.H. v. Department of Children & Families, this court noted that the trial court “incongruously” terminated “parental rights and the cessation of parental visitation, except for ‘a visit to enable the parents and child to say goodbye to each other,’ ” while also finding that that it was “ ‘not necessarily true that [P.G.H.] needs to be completely estranged from her parents in order for it to be in the manifest best interest to have parental rights ‘terminated’ so that under ‘appropriate supervision, the parents may not be harmful to [P.G.H.] simply by maintaining a relationship.’ ” 145 So.3d at 886. This court held that “[gjiven such a finding, there is nothing in the record indicating that a guardianship as suggested by the aunt would not protect the child, as it has since her removal from the family home.” Id.
Similar incongruities exists here, with the trial court finding that the children would not be harmed by TPR, because their aunt would allow them to maintain contact with the Mother, and its finding that the children did not have a relationship with the Mother, despite finding that the children had a bond with her. Thus, as in G.H., these findings actually militate against termination.

Conclusion

Based on the foregoing, we AFFIRM the trial court’s order to the extent it found that termination was warranted pursuant to sections 39.806(l)(c) and 39.806(l)(e), Florida Statutes, and because it was in the children’s manifest best interests. We REVERSE the order to the extent that it found termination of the Mother’s parental rights was the least restrictive means available to protect the children from serious harm. Based on this reversal, we REMAND for proceedings consistent with this opinion.
LEWIS, C.J., and BENTON, JJ., concur.

. DCF claims that our original opinion "is currently being interpreted to mean" that "termination of parental rights is precluded because there is some connection or bond between the children and their mother and there may be some future supervised contact between the mother and the children.” Such an interpretation overstates this opinion. In this case, DCF failed to establish that TPR, as opposed to some other arrangement, is the least restrictive means of protecting the children from harm. This conclusion is based on the testimony that it was safe for the children to have supervised contact with Appellant, as well as the GAL's own assessment that TPR would not harm the children despite their bond with Appellant, because the prospective adoptive aunt would allow such contact. In other words, the State took the position that it was the children’s continued (albeit supervised) contact with Appellant that would avoid the harm resulting from TPR — making TPR incongruous with the least-restrictive means analysis, which seeks to prevent, to the extent possible, harm to the children.

. The father died during the litigation. 144 So.3d at 665 n. 1.