DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

In the Interest of A.B. and K.B., children.

DEPARTMENT OF CHILDREN AND FAMILIES and
STATEWIDE GUARDIAN AD LITEM OFFICE,

Appellants,

v.

K.B. and A.B.,

Appellees.

No. 2D2025-2510
_____

February 18, 2026

Appeal from the Circuit Court for Hillsborough County; Leslie Schultz-Kin, Judge.

Mary Soorus of Children's Legal Services, Tampa, for Appellant Department of Children and Families.

Sara Elizabeth Goldfarb, Statewide Director of Appeals, and Sarah Todd Weitz, Senior Attorney, Tallahassee, for Appellant Statewide Guardian ad Litem Office.

Rinky S. Parwani of Parwani Law, P.A., Tampa, for Appellee K.B.

David A. Dee, Tampa, for Appellee A.B.

BLACK, Judge.

The Department of Children and Families appeals from the order denying its expedited petition for termination of parental rights as to the

parents of A.B. and K.B.[1]  We reverse and remand for further proceedings.

The children, ages six and two, were sheltered on September 21, 2024.  The Department filed its expedited petition for termination of parental rights as to both the mother and the father on October 15, 2024.  The petition alleged egregious conduct, pursuant to section 39.806(1)(f), Florida Statutes (2024), and chronic abuse, pursuant to section 39.806(1)(g).  The petition also alleged grounds for single parent termination pursuant to section 39.811(6).  A trial was held on June 9, 2025.

Because our conclusion as to egregious conduct is dispositive, we address the evidence relevant to that ground for termination.  We note that section 39.806(1)(f) permits termination of parental rights to siblings, even in the absence of proof of a nexus between the egregious conduct and the potential harm to the siblings, such that a discussion of the evidence of A.B.'s abuse is unnecessary.

The record reflects that K.B., two years old, was taken by her parents to Advent Health Hospital's emergency room on September 6, 2024.  She was hypothermic, bradycardic, and severely emaciated.  In the emergency room K.B. received two "code doses" of epinephrine and atropine.  She weighed sixteen pounds.  K.B. was subsequently flown from Advent Health to St. Joseph's Children's Hospital where she was admitted to the pediatric intensive care unit (PICU).  An abuse report for failure to thrive and medical neglect was made following K.B.'s

---

[1] Though the court denied the petition, it determined that the children would remain in their respective placements and that case plans for the parents would be developed.

2

September 8, 2024, admission to St. Joseph's. While in the PICU, K.B. required an epinephrine drip.

At the trial on the petition for termination, the Child Protection Team advanced practice registered nurse (APRN) who evaluated K.B. following the abuse report was accepted as an expert in the fields of child abuse and child neglect. The APRN testified that K.B. was nonverbal, had no purposeful movements, and was severely emaciated. K.B. had muscle wasting; she had no fatty subcutaneous tissue. She was in the third percentile for both height and weight, indicating failure to thrive, and her Z-score was negative six, indicating severe malnutrition. The APRN testified that she had "never seen" in her twenty-three-year career a negative six Z-score. K.B.'s medical records included that cardiologists had determined that K.B.'s heart failure was the result of severe malnutrition; her body had begun to break down her muscles and organs to be used as energy. K.B. could not sit unassisted, and her body was rejecting nourishment, indicating "a prolonged period of starvation." K.B. remained in the hospital for two months. During that time the parents declined some medical intervention, including a feeding tube. The APRN testified that the parents' medical decision-making rights were removed by court order, and a feeding tube was placed. During her hospitalization, K.B. gained nine pounds.

In addition to evaluating K.B., the APRN also spoke with K.B.'s mother. K.B.'s mother reported that K.B. had not seen a doctor in more than a year. The mother reported that K.B. began having difficulty keeping food down a month prior to her admission to the hospital.

The APRN's opinion was that there was evidence of medical neglect for the parents' failure to seek medical care, and she testified, over

3

objection, that she had "concerns about the family's ability to recognize when there is a problem with the child."

Subsequent to her hospitalization and shelter, K.B. had significant testing completed. She was diagnosed with chromosome six deletion and sickle cell trait. The APRN could not testify as to whether or how those diagnoses may have been responsible for K.B.'s malnourishment. She clarified that chromosome six deletion is present at birth and causes developmental delays but that K.B. would not have become emaciated within a short period of time. The APRN testified that had medical care been sought, the child would not have presented to the emergency room in critical condition with heart failure.

The mother testified that K.B. began showing signs of sickness in the month before her hospitalization. The mother believed that K.B. had acid reflux, causing her to spit out foods. According to the mother, K.B. did not spit up at every meal and stopped spitting up completely for a few weeks after the parents implemented changes to accommodate the suspected acid reflux. However, K.B. began spitting up again, and the parents took her to the hospital a few days thereafter. K.B. had not been to a pediatrician since she was four months old, but K.B. had no medical issues and there were no health concerns prior to the month preceding K.B.'s hospitalization. The mother testified that K.B. had lost some weight due to the spitting up, but she did not know how much because she did not weigh the child.

K.B.'s case manager testified that K.B. requires around-the-clock care and has been in medical foster care since her release from the hospital. K.B. has a cardiologist, neurologist, and gastrologist, among other specialists. She still has a feeding tube.

4

The court ordered written closing arguments and ultimately denied the petition for termination. In its order, the trial court found that the Department had failed to prove by clear and convincing evidence that K.B.'s parents had engaged in egregious conduct. While the court found that the evidence demonstrated that K.B. was the victim of medical neglect, the court determined that the medical neglect did not rise to the level of egregious conduct. Specifically, the court found that while the Department's witnesses were credible, none could explain whether or how K.B.'s diagnosed medical conditions impacted her medical crisis. The court also found the evidence insufficient to prove that the parents failed to timely seek medical care. The court found that the Department's evidence only "somewhat refuted" the mother's testimony.

The court also found that the Department had failed to meet its burden to establish chronic abuse. Importantly, the court acknowledged the testimony that K.B. would have needed medical care for a lengthy period of time and had not had pediatric care in two years; but it reiterated that no evidence established how or whether K.B.'s diagnosed conditions impacted her medical crisis.

On appeal, the Department contends that it presented clear and convincing evidence that K.B.'s life was threatened as a result of the parents' failure to seek medical care, meeting the definition of egregious conduct. The Department points out that the parties stipulated that the APRN was an expert in child abuse and child neglect and that she testified:

> [E]ven if the child had a chromosomal deficiency and had difficulty eating, that would have been present for a period of time. It would have been present since birth. So had medical care been sought, those issues would have been resolved and . . . would not have resulted in critical condition with—and heart failure, and . . . arriving to the emergency room.

5

The Department argues that the clear and convincing evidence established that notwithstanding K.B.'s diagnoses, the parents engaged in egregious conduct by failing to seek care for K.B. until she was severely malnourished, experiencing muscle waste and heart failure. As the APRN testified: "[T]he chromosomal deficiency is not what caused the child to crash. It was the malnourishment and the heart failure that caused the child to crash."

Our review is highly deferential, even in appeals from denials of termination. *See Dep't of Child. & Fams. v. D.E.*, 325 So. 3d 277, 279 (Fla. 5th DCA 2021) (quoting *C.D. v. Dep't of Child. & Fams.*, 164 So. 3d 40, 42 (Fla. 1st DCA 2015)). Nonetheless, "an appellate court is not required to defer to the trial court where there is no theory or principal of law that would support the trial court's conclusions of law." *Id.* (quoting *Statewide Guardian Ad Litem Program v. A.A.*, 171 So. 3d 174, 177 (Fla. 5th DCA 2015)). And "[a]n appellate court may reverse the trial court's order denying a petition to terminate parental rights when the denial is not supported by competent substantial evidence and is not in the best interests of the children." *Dep't of Child. & Fams. v. K.F.*, 916 So. 2d 948, 950 (Fla. 4th DCA 2005) (citing *Dep't of Child. & Fams. v. A.D.*, 904 So. 2d 480, 482 (Fla. 1st DCA 2005)); *see also Dep't of Child. & Fam. Servs. v. L.McC.*, 820 So. 2d 1064, 1065 (Fla. 2d DCA 2002) ("Where clear and convincing evidence is required, the trial court's findings should not be overturned on appeal unless the findings are clearly erroneous or lacking in evidentiary support." (first citing *Fla. Bar v. Hooper*, 509 So. 2d 289, 290 (Fla. 1987); and then citing *Doe v. Dep't of Health & Rehab. Servs.*, 563 So. 2d 655, 662 (Fla. 1st DCA 1990))). Further, "[w]here the testimony on the pivotal issues of fact is not contradicted or impeached in any respect, and no conflicting evidence is introduced, these

6

statements of fact can not [sic] be wholly disregarded or arbitrarily rejected." *Dep't of Child. & Fams. v. J.J.*, 368 So. 3d 1017, 1022 (Fla. 5th DCA 2023) (quoting *Guardian ad Litem Program v. K.H.*, 276 So. 3d 897, 902 n.2 (Fla. 3d DCA 2019)). "A trial court may reject an unrebutted expert opinion when ruling on a case, but 'it is not free to do so arbitrarily.' " *E.L. v. A.L.*, 357 So. 3d 792, 795 (Fla. 2d DCA 2023) (quoting *Morroni v. Wilmington Sav. Fund Soc'y FSB*, 292 So. 3d 514, 518 (Fla. 2d DCA 2020)).

> To prevail in its petition for termination of parental rights, [the Department] must prove three elements by clear and convincing evidence. Two are statutory: (1) a ground for termination; and (2) "the child's manifest best interests would be served by granting the petition to terminate parental rights." The Florida Supreme Court requires the third: termination must be "the least restrictive means of protecting the child from serious harm."

*Dep't of Child. & Fams. v. S.S.L.*, 352 So. 3d 521, 523-24 (Fla. 5th DCA 2022) (citations omitted) (first quoting *E.K. v. Dep't of Child. & Fams.*, 326 So. 3d 149, 152 (Fla. 1st DCA 2021); and then quoting *Padgett v. Dep't of Health & Rehab. Servs.*, 577 So. 2d 565, 571 (Fla. 1991)). However, if the Department establishes egregious conduct "[r]easonable efforts to preserve and reunify families are not required." § 39.806(2). That is, once egregious conduct is found, termination is the least restrictive means of protecting the children. *K.E. v. Dep't of Child. & Fams.*, 263 So. 3d 202, 213 (Fla. 2d DCA 2019) ("Ordinarily, to prove that termination of parental rights is the least restrictive means of protecting the child, the Department must show that it has made a good-faith effort to rehabilitate the parent and reunite the family, such as through the provision of a case plan. However, in cases involving egregious conduct by a parent, 'the termination of parental rights without the use of plans

7

or agreements is the least restrictive means.' " (citation omitted) (quoting *In re T.M.*, 641 So. 2d 410, 413 (Fla. 1994))).

Section 39.806(1)(f) provides that termination may be warranted when "[t]he parent or parents engaged in egregious conduct or had the opportunity and capability to prevent and knowingly failed to prevent egregious conduct that threatens the life, safety, or physical, mental, or emotional health of the child or the child's sibling." Subsection (1)(f)2 specifies that " 'egregious conduct' means abuse, abandonment, neglect, or any other conduct that is deplorable, flagrant, or outrageous by a normal standard of conduct" and "may include an act or omission that occurred only once but was of such intensity, magnitude, or severity as to endanger the life of the child."

The court's basis for denial—that the evidence was insufficient to establish egregious conduct—is not supported by competent substantial evidence. The court laid out the mother's testimony and found that the APRN's testimony "somewhat refuted" the mother's testimony. But the trial court offered no explanation for rejecting the APRN's unrefuted testimony. The parties stipulated that the APRN was an expert on child abuse, and her testimony regarding K.B.'s physical condition was unrebutted. The undisputed evidence included that K.B. presented to the hospital in critical condition: she was bradycardic and hypothermic and required an epinephrine drip. Cardiologists determined that K.B.'s heart failure was the result of severe malnutrition; her body had begun to break down her muscles and organs to be used as energy. While K.B.'s mother testified that it was only in the month before being taken to the hospital that K.B. began spitting out food, that testimony did not contradict the APRN's testimony that K.B. presented to the emergency room hypothermic, bradycardic, and severely emaciated or that she

8

required an epinephrine drip while she remained in PICU. Thus even crediting the mother's account of the timeframe—that K.B. had only been spitting up for a month before her hospitalization—rather than the expert's testimony that K.B.'s condition was the result of "a prolonged period of starvation . . . probably many months," the parents' failure to provide medical care before K.B. was in critical condition is egregious conduct. It is neglect that on the unrefuted evidence presented to the court endangered the life of the child as required under section 39.806(1)(f). *See K.F.,* 916 So. 2d at 949-50 (reversing for termination of parental rights where the undisputed evidence included that the children had not received medical care since birth and exhibited signs of starvation or were nutritionally at risk).

The court's denial of the petition for termination is not supported by competent substantial evidence. The Department presented clear and convincing evidence of egregious conduct supporting termination of rights as to both K.B. and A.B. *See* § 39.806(1)(f) ("Proof of a nexus between egregious conduct to a child and the potential harm to the child's sibling is not required."). As a result, we do not address the second basis for termination, chronic abuse. *See* § 39.802(4)(a) (requiring that "at least one of the grounds listed in s. 39.806 has been met"); *M.S. v. Dep't of Child. & Fams.,* 210 So. 3d 147, 152-53 (Fla. 2d DCA 2016) ("Only one ground is required for termination." (first citing *S.B. v. Dep't of Child. & Fam. Servs.,* 80 So. 3d 438, 439 (Fla. 2d DCA 2012); and then citing *A.H. v. Dep't of Child. & Fams.,* 63 So. 3d 874, 877 (Fla. 1st DCA 2011))).

Because the trial court found that termination was not supported by clear and convincing evidence, it did not address whether termination is in the manifest best interests of the children. And while there was

9

testimony presented regarding the children's manifest best interests, the Department does not ask this court to make a manifest best interests determination. It asks this court to remand the matter to the trial court for the trial court to make findings regarding manifest best interests. *See Guardian ad Litem v. S.P.*, 412 So. 3d 944, 954 (Fla. 5th DCA 2025) ("[W]e find that [the Department] established the[] two elements regarding termination of the Mother's parental rights. As a result, the trial court erred by not determining if the termination was in the manifest best interests of the child. We therefore reverse for proceedings consistent with this opinion and for the trial court to make findings as to the manifest best interests of the child."); *Dep't of Child. & Fams. v. C.R.*, 397 So. 3d 803, 805 (Fla. 5th DCA 2024) ("[T]he trial court has not yet considered the best interests of the children. Accordingly, we reverse the order. On remand, . . . the trial court should make findings.").

Based on the foregoing, we reverse the order denying the Department's petition for termination of parental rights and remand for further proceedings consistent with this opinion.

Reversed and remanded.

SILBERMAN and ROTHSTEIN-YOUAKIM, JJ., Concur.

_____

Opinion subject to revision prior to official publication.

10