MAY, C.J.
 

 The mother appeals an order terminating her parental rights. She argues the court erred in denying her motion to dismiss the amended petition, which failed to allege reasonable efforts to preserve and reunify the family, that termination was not the least restrictive means of protecting the child, and that the mother was not responsible for the lack of contact with the child. We find no error and affirm.
 

 In March 2010, the trial court found probable cause to shelter the child based upon allegations of sexual abuse by the father and failure to protect by the mother. The child was placed with her paternal grandparents. The court further ordered the mother to have no contact with the child. The Department of Children and Families (“DCF”) initiated a dependency petition.
 

 In May, the father surrendered his parental rights, and DCF filed a Petition for Termination of Parental Rights and Permanent Commitment of the Minor Child. DCF alleged the mother had abandoned the child and could not be located. When DCF located the mother, it sought to provide her with a reunification plan, to which the child objected.
 

 In September, the child filed a Notice Adopting the Petition. DCF subsequently dismissed the petition in February, 2011. A week later, the child moved to amend the petition to name the child as petitioner. The court granted the motion.
 

 The mother moved to dismiss and argued that no reasonable efforts to preserve and reunify the family had been made. The court denied the motion.
 

 Prior to trial, the parties stipulated that the mother had not been provided a Case Plan and there had been no adjudication of dependency. They also stipulated that the child had not seen the mother for at least three years and nine months.
 

 The evidence revealed that the child had lived with the mother until she was eight years old. The father had little contact with the child until 2000 when he and the mother became engaged in a contentious paternity action. Around the same time, the paternal grandfather and step-grandmother moved to Florida.
 

 In December 2005, the father was made the primary residential parent with shared parenting responsibilities; the mother was given liberal visitation and ordered to pay child support. The father, however, thwarted the mother’s timesharing with the child. The mother filed several pro se motions to enforce her visitation rights. In December 2006, a magistrate found the mother’s inability to visit the child was due to the father’s wrongful actions.
 

 The mother never paid any support and failed to provide clothing, housing, and medical treatment over the next five years. The mother never wrote to the daughter, and last visited with the child nearly four years before the petition was filed. At that visit, the mother engaged in sexual activity with her boyfriend in the presence of the child. The mother testified that after trying to re-establish contact without success, she “let it lie.” She admitted that
 
 *223
 
 she did not have the financial ability to support the child.
 

 The child testified that she wanted a fresh start; she also stated that she does not relate to her mother and feels that her mother does not have her “life in order.” The child further explained that there is no bond other than a biological one between the two. The child feels loved by her grandparents, who want to adopt her.
 

 The child’s therapist testified that it was in the best interests of the child to be in a stable, safe environment, and that her current placement was highly conducive to her recovery. To remove the child from the grandparents would be emotionally damaging to her and not in her best interests.
 

 A psychologist and forensic examiner explained that the child was exposed to parental estrangement rather than parental alienation. Parental estrangement is a child’s healthy adaptive response to trauma, as opposed to parental alienation, which occurs when one parent provides erroneous information to the child resulting in unwarranted rejection of the other parent.
 

 The trial court orally announced its findings, which were later reduced to writing. The court found the child to be “mature, articulate, smart, [and] intellectual.” The court granted the amended petition. It is from this order that the mother now appeals.
 

 The mother’s argument is essentially that DCF’s failure to offer a Case Plan and make reasonable efforts to preserve and reunify the family requires a reversal of the Termination Order. The mother also argues that termination of parental rights was not the least restrictive means to protect the child. And last, the mother argues that her lack of contact with the child was not her fault.
 

 The child responds that the appeal of the order denying the motion to dismiss is untimely. Alternatively, she maintains that the mother’s stipulated time away from the child was sufficient to establish abandonment, that termination was in the child’s manifest best interests, and that the least restrictive means test should not trump the child’s best interests.
 

 “Where the trial court’s finding that there is clear and convincing evidence to terminate parental rights is supported by competent, substantial evidence, the appellate court has no choice but to affirm.”
 
 D.G. v. Dep’t of Children & Families,
 
 — So.3d -, -, 2011 WL 2462847 (Fla. 4th DCA 2011) (citing
 
 In re Baby E.A.W.,
 
 658 So.2d 961, 967 (Fla.1995)).
 

 Abandonment is a sufficient ground for terminating parental rights.
 
 See
 
 § 39.806(l)(b), Fla. Stat. (2011). Section 39.01(1) defines abandonment as: “a situation in which the parent or legal custodian of a child ... while being able, makes no provision for the child’s support and has failed to establish or maintain a substantial and positive relationship with the child.” § 39.01(1), Fla. Stat. The statute further describes “establishing] or maintaining] a substantial and positive relationship” as including “frequent and regular contact with the child through frequent and regular visitation or frequent and regular communication to or with the child.”
 
 Id.
 

 The competent, substantial evidence supports the trial court’s order. As the trial court explained:
 

 26. There is clear and convincing evidence that there has been no contact by and between the mother and [child] since March 12, 2007. There is no question that mom’s efforts were thwarted by the father, by the mom’s own poverty, and by the mom’s own thinking and
 
 *224
 
 suspicions. The mom made the decision to not do anything further since March 12, 2007. She did nothing in 2008, 2009, 2010. She aban[-]doned [the child]. It’s been four years and she has had a terrible time from a financial point of view, from a health point of view, and from being suspicious. That doesn’t mean that mom has forgotten her daughter or that she doesn’t want to have a relationship with her daughter. However, it’s too late to close the barn door after the horse is out of the barn. That’s where we are today. It’s too late for the mother.
 

 The court found that the child “exhibited a healthy adaptive response to the circumstances in her life.” The court found the child to be mature and happy in her placement with her paternal grandparents, who desire to adopt her. The court also vacated a restraining order against the mother to allow for the child to have future contact with the mother.
 

 The trial court’s findings of fact are supported by competent, substantial evidence. The mother had no contact with the child for nearly four years. She has never supported the child since the child was placed with her father. The stipulated length of time without contact, in combination with the evidence, establishes abandonment.
 

 The mother argues that termination was not the least restrictive means of protecting the child and that DCF failed to provide a Case Plan. “[T]he least restrictive means test [is not] intended to preserve the parental bonds at the cost of a child’s future. Instead, this test requires that ‘those measures short of termination should be utilized if such measures can permit the safe reestablishment of the parent-child bond.’ ”
 
 A.J. v. K.A.O.,
 
 951 So.2d 30, 33 (Fla. 5th DCA 2007) (quoting
 
 S.S. v. D.L.,
 
 944 So.2d 553, 558 (Fla. 4th DCA 2007)) (citation omitted).
 

 Here, both the child and her therapist testified concerning the lack of any bond between the child and her mother. The therapist opined that the child’s placement with the paternal grandparents was in the child’s best interest. We have previously held' that termination may be the least restrictive means under similar, though not identical, circumstances.
 
 C.A.H. v. Dep’t of Children & Families,
 
 830 So.2d 939, 941 (Fla. 4th DCA 2002) (finding termination of parental rights to be the least restrictive means of protecting the child from further harm in an abandonment case). And, because termination of parental rights can be the goal of a case plan, we find no error.
 
 See
 
 § 39.806(3), Fla. Stat. (2011).
 

 For the reasons expressed above, we affirm.
 

 Affirmed.
 

 STEVENSON and CIKLIN, JJ„ concur.