BENTON, C.J.
A.H. appeals an order terminating parental rights as to his two daughters, each of whose initials are also A.H. We agree with his contention that none of the five statutory grounds on which the trial court relied to terminate his parental rights are supported by competent, substantial evidence which could reasonably be found to be clear and convincing, and reverse.
On November 28, 2008, when he was a year-and-a-half, the only son of appellant A.H. and S.S. was admitted to a hospital intensive care unit with a brain injury. Three days later he died. Because the Child Protection Team concluded the brain injury was “diagnostic of abuse,” the Department of Children and Family Services (Department) filed a shelter petition resulting in the dead child’s two sisters’ being placed with their maternal grandmother. At some point, appellant consented to the trial court’s adjudicating the sisters, his daughters A.H. and A.H., “dependent.” S.S., the children’s mother, was eventually arrested and charged criminally in connection with the son’s death.
The Department did not offer S.S. a case plan, and filed an expedited petition for termination of her parental rights.[1] (“Time is of the essence for permanency of children in the dependency system.” § 39.621(1), Fla. Stat. (2009).) But the Department’s case plan for appellant A.H. originally had as its primary goal his reunification with his daughters. Nine months after his initial case plan was adopted, however, the trial court ruled that appellant had not substantially complied with his case plan, and changed the permanency goal for the two sisters to adoption, after termination of A.H.’s parental rights. The Department then filed a petition for termination of parental rights, initiating the present proceeding.
As grounds for termination, an amended petition alleged that: under section 39.806(l)(b), Florida Statutes (2009), appellant had abandoned the children; under section 39.806(l)(c), appellant and S.S. had engaged in conduct toward the children demonstrating that their continuation as parents threatened the life, safety, well-being, or physical, mental, or emotional health of the children; under section 39.806(l)(e), appellant had failed to substantially comply with his case plan; under section 39.806(l)(f), appellant and S.S. had engaged in egregious conduct or knowingly failed to prevent egregious conduct that threatened the life, safety or physical, mental, or emotional health of the children; under section 39.806(l)(g), appellant and S.S. had subjected a child and/or sibling to aggravated child abuse; and under section 39.806(l)(h), S.S. had murdered a sibling. After a hearing that took place in fits and starts on various dates spanning more than a year, the trial court terminated appellant’s parental rights on all five grounds alleged against him in the petition.
A.H. argues that the trial court’s findings are not supported by competent, substantial evidence as to any ground. “To terminate parental rights, the State must establish: (1) the existence of one of the statutory grounds set forth in Chapter 39; (2) that termination is in the best *1216 interest of the child; and (3) that termination is the least restrictive means of protecting the child from harm.” R.L. v. Dep’t of Children & Families, 63 So.3d 920, 921-22 (Fla. 5th DCA 2011). The Department must prove these elements by clear and convincing evidence. See N.L. v. Dep’t of Children & Family Servs., 843 So.2d 996, 999 (Fla. 1st DCA 2003). “Where the trial court’s findings that the evidence is clear and convincing are supported by competent substantial evidence, and the appellate court cannot say that no one could reasonably find such evidence to be clear and convincing, the finding will not be set aside on appellate review.” Id. at 1000 (footnote omitted). We consider each ground and the evidence adduced in support, in turn.
Section 39.806(l)(f)
First, appellant disputes the trial court’s ruling that he knowingly failed to protect his son from the traumatic brain injury the child’s mother, S.S., inflicted. Under section 39.806(l)(f), parental rights can be terminated if the “parent or parents engaged in egregious conduct or had the opportunity and capability to prevent and knowingly failed to prevent egregious conduct that threatens the life, safety, or physical, mental, or emotional health of the child or the child’s sibling.”
In this connection, the trial court found that appellant “had knowledge that the child ... previously suffered a broken leg in March 2008 under suspicious circumstances and he continued to leave all four children alone with the mother.” The evidence clearly supported the finding that appellant’s son had suffered a broken femur in March of 2008. An investigator with the Department testified that the Department investigated the broken bone and deemed it “diagnostic of abuse,” but could not ascertain the cause, so sought to remove none of the children from their parents’ custody or care at that time.[2] The investigator was able to determine that the broken leg had occurred sometime between Friday and Monday — the child had attended a day care center on Friday and on Monday — and that appellant had not been home over the weekend.
A Departmental investigator testified that appellant told her he found it suspicious that the child was injured twice (the second injury being the fatal, brain injury) [3] while in the mother’s care. But appellant voiced these suspicions only after the child received the second injury. The Department presented no evidence that appellant was actually suspicious — and no clear and convincing evidence that he had reason to be suspicious — of the mother before the brain injury. See N.L., 843 So.2d at 1001 (record contained no evidence that mother was physically present when child was abused and no evidence showed “long — term abuse or a pattern of abuse of [the child] which might form a basis for a finding that N.L. ‘knowingly failed to prevent’ the abuse of’ the child).
A parent’s knowing failure to prevent egregious conduct where he has *1217 an opportunity to prevent it is a sufficient basis to terminate parental rights under section 39.806(1)(f), see In re B.S., 697 So.2d 914, 917 (Fla. 2d DCA 1997), but the evidence does not support a finding of such a failure in the present case. The Department argues that, while it was clear that S.S., not appellant, was at home with their son when he broke his leg, appellant engaged in “egregious conduct” by allowing the children to remain with the mother thereafter. The Department did not show, however, that appellant then knew that S.S. had abused the children or that he should have known that she was likely to abuse the children in the future. A witness for the Department testified that the Department — who presumably had the same information appellant had — was not able to determine how the child broke his leg and, for that reason, did not remove the children from S.S.’s care after their investigation. The Department did not prove that appellant knew anything the Department did not also know.
Section 39.806(l)(g)
Next, appellant disputes the trial court’s conclusion that he “subjected a child and/or sibling to aggravated child abuse as defined in s[ection] 827.03.” Aggravated child abuse occurs when a person: “(a) Commits aggravated battery[4] on a child; (b) Willfully tortures, maliciously punishes, or willfully and unlawfully cages a child; or (c) Knowingly or willfully abuses a child and in so doing causes great bodily harm, permanent disability, or permanent disfigurement to the child.” § 827.03(2), Fla. Stat. (2009). The Department argues that, because appellant failed to protect the deceased child, he subjected[5] him to aggravated child abuse. In the wake of the second injury, the record plainly supports a finding that the mother S.S. committed aggravated child abuse. But, for the same reasons the record does not support a finding that appellant knowingly failed to protect his son from S.S., the evidence did not establish that he “subjected [him] to aggravated child abuse.”
Section 39.806(l)(e)
Parental rights can be terminated when the record establishes that a parent did not comply with the essential tasks required by a case plan. See M.S. v. Dep’t of Children & Families, 765 So.2d 152, 153 (Fla. 1st DCA 2000). Under section 39.806(l)(e), termination of parental rights is allowable:
When a child has been adjudicated dependent, a case plan has been filed with the court, and:
1. The child continues to be abused, neglected, or abandoned by the parent or parents. The failure of the parent or parents to substantially comply with the case plan for a period of 9 months after an adjudication of the child as a dependent child or the child’s placement into shelter care, whichever occurs first, constitutes evidence of continuing abuse, neglect, or abandonment unless the failure to substantially comply with the case plan was due to the parent’s lack of financial resources or to the failure of the department to make reasonable efforts to reunify the parent and child.
(Emphasis supplied.) Substantial compliance means “the circumstances which caused the creation of the case plan have *1218 been significantly remedied to the extent that the well-being and safety of the child will not be endangered upon the child’s remaining with or being returned to the child’s parent.” § 39.01(73), Fla. Stat. (2009).
“ ‘[T]he “substantially comply” language contained in section [39.806] ... is a term of art [that] requires more than just a determination that the case plan has not been completed.’ ” R.A. v. Dep’t of Children & Families, 30 So.3d 722, 723 (Fla. 5th DCA 2010) (quoting B.L. v. Dep’t of Children & Families, 950 So.2d 1264, 1266 (Fla. 5th DCA 2007)). Although there was evidence that appellant did not complete all the case plan requirements, there was no evidence that, as a consequence, the well-being and safety of the children would in any way be endangered if they were returned to appellant. See id. at 723-24 (“The trial court is required to determine whether the cause that led to the dependency ‘ha[d] not been significantly remedied to the extent that the well being and safety of [J.A.] will be endangered upon the child ... being returned to the [father].’ ... While substance abuse was part of the father’s history, there was no indication, as the trial court specifically found, that the father’s substance abuse caused harm to J.A.” (citation omitted)). The Department specifically concedes that the evidence did not establish that appellant’s continuing involvement in his children’s lives threatened their safety or well-being. The Department failed to prove that appellant failed to “substantially comply” with his case plan within the meaning of section 39.806(l)(e).
Section 39;806(l)(b)
Abandonment is “a situation in which the parent ... makes no provision for the child’s support and has failed to establish or maintain a substantial and positive relationship with the child.” § 39.01(1), Fla. Stat. (2009). The trial court found that appellant had failed to maintain regular and meaningful visitation with the children for several months, failed to provide a stable home, provided minimal support for the children, and failed to evince a settled purpose to assume all parental responsibility for the children since their removal. The maternal grandmother, with whom the children have been living since their removal, testified, however, that appellant visited the children about four times a week, provided them with food and clothing, helped with maintenance around the house, and gave her money whenever she asked. The guardian ad litem and two case workers the Department assigned to the case corroborated her testimony. Cf. L.W. v. Dep’t of Children & Families, 71 So.3d 221, 223-24 (Fla. 4th DCA 2011) (competent, substantial evidence supported trial court’s finding that mother abandoned children when she made no contact with them for four years and never supported them). Both the Department and the guardian ad litem have conceded that the trial court’s findings regarding abandonment are unsupported by competent, substantial evidence.
Section 39.806(l)(c)
Finally, appellant challenges the trial court’s finding that his continued involvement with his children would threaten their life, safety, or health. Parental rights can be terminated when parents have “engaged in conduct toward the child ... that demonstrates that the continuing involvement of the parent or parents in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child irrespective of the provision of services.” § 39.806(l)(c), Fla. Stat. (2009). Again, the Department and the guardian ad litem concede that the evidence presented at the hearing was insufficient to support termination on this ground. Again we agree.
*1219 The Department did introduce evidence of drug use by appellant in the past, but no evidence that appellant had engaged in any conduct that posed any risk to the children. See, e.g., M.H. v. Dep’t of Children & Families, 866 So.2d 220, 228 (Fla. 1st DCA 2004) (finding evidence insufficient to terminate mother’s rights under section 39.806(l)(c), as “there was no evidence that her children suffered harm as a result of her [drug] addiction, nor that [the mother] failed to meet their needs while they were in her care”).
In sum, the evidence was not sufficient to prove clearly and convincingly any of the statutory grounds on which the trial court relied in terminating appellant’s parental rights. Accordingly, we reverse.
VAN NORTWICK, J., concurs.
WOLF, J., concurs in result only.

. The mere fact that the mother’s parental rights were terminated under section 39.806(h), does not authorize or require automatic termination of appellant's parental rights. See § 39.81 l(6)(e), Fla. Stat. (2009).

. The Department did offer "voluntary services” to appellant and S.S.

. The mother was the only one at home at the time of the brain injury, and several witnesses testified that her conflicting accounts of how the child received his injuries were all inconsistent with the actual injuries he sustained. The boy was admitted to the hospital with a severe hematoma, retinal hemorrhages, and swelling in his brain. Doctors believed his injuries were a result of child abuse, and the medical examiner who performed the autopsy determined that he died from abusive head trauma, the result of blunt force injury. But it was undisputed that appellant was not at home at the time of the brain injury, either, and only the mother was arrested for the death.

. "A person commits aggravated battery who, in committing battery: 1. Intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; or 2. Uses a deadly weapon.” § 784.045(l)(a), Fla. Stat. (2009).

. Subject means "to cause to undergo or endure.” The Merriam-Webster Dictionary 712 (New ed. 2004).