IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

STATE OF FLORIDA,
DEPARTMENT OF CHILDREN
AND FAMILIES AND THE
GUARDIAN AD LITEM
PROGRAM,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-3328

     Appellant,

v.

B.C., THE MOTHER AND C.S.,
THE FATHER,

     Appellee.

_____/

Opinion filed February 18, 2016.

An appeal from the Circuit Court for Duval County.
David M. Gooding, Judge.

Ward L. Metzger, Department of Children and Families, Jacksonville, and David
P. Krupski, Florida Guardian Ad Litem Program, Sanford, for Appellant.

Susan Barber, Assistant Regional Conflict Counsel, Tallahassee, for Appellee.


MAKAR, J.

Termination of the constitutionally-protected parental right is permissible

only if it is shown that "reunification with the parent poses a substantial risk of

significant harm to the child" and that termination is the "least restrictive means"

of achieving the State's interest of "protecting the child from serious harm." Padgett v. Dep't of HRS, 577 So. 2d 565, 571 (Fla. 1991). The trial judge concluded—based on clear and convincing evidence—that termination of parental rights was warranted and in the manifest best interests of the children involved. He nonetheless concluded that application of the least restrictive means test precluded him from doing so simply because some limited opportunities existed for supervised or telephonic parental contact that posed no harm to the children, none offering any potential for reunification. As discussed below, the availability of such contact does not preclude termination under the least restrictive means test if statutory grounds for termination have been shown, the manifest interests of the children are furthered by termination, and reunification is not a possible outcome.

I.

The Department of Children and Families must prove three things before parental rights may be terminated: the existence of a statutory ground for termination under section 39.806, Florida Statutes; that termination is in the child's manifest best interests under section 39.810, Florida Statutes; and the termination of parental rights is the least restrictive means of protecting the child from serious harm. Padgett, 577 So. 2d at 571. Because a statutory basis for termination has been proven and the manifest best interests of the child are served by severing the parental rights, the only issue in this case, and the three others that share similar

facts,[1] is whether termination of parental rights is foreclosed by the least restrictive means test because, despite reunification being unattainable, there nonetheless exists the potential for some non-harmful, irregular, supervised/telephonic contact with the parents.

The trial court's findings demonstrated that "the termination of parental rights is the least restrictive means to achieve permanency for the children." This conclusion was buttressed by the fact that "it is not safe to continue the parent-child relationship," that the mother "abandoned the children" and failed to maintain "frequent and regular contact with the children through visitation or communication," and had "made no significant contribution to the children's care and maintenance." She also "failed to establish or maintain a substantial or positive relationship with her children." The mother had been given chances "to maintain sobriety and undergo treatment for mental health" but "failed." Her "mental illness prevents her from being able to safely parent." And no available social services exist for the "mother that would safely protect, or alleviate the safety risks to the children." Instead, the "children cannot safely be reunified" with the mother because her "continuing mental illness and substance abuse make her dangerous if reunified with her children." Simply stated, "[r]eunification is not possible because of the risk of harm that particular permanency option poses."

---

[1] This case shares the same legal issue with the following cases, which have been consolidated for resolution: 1D15-3116, 1D15-3151, and 1D15-3153.

Despite this litany of findings supporting termination, the trial court believed it could not do so because the "children are not at risk of harm during supervised visitation with the mother" via telephonic means. It concluded that "telephonic contact or some other arrangement of supervised visitation after testing and medication management [of the mother] might be sufficient to protect the children from risk of serious harm and is a least restrictive alternative to termination." The gist of the trial court's analysis is that despite clear and convincing evidence that the parental bond was beyond reunification and should be terminated, three recent cases (discussed below) suggest that the availability of some highly constrained, sporadic, and closely supervised contact between child and parent automatically forestalls termination. We conclude that the three cases can be harmonized to avoid the harsh results that this case and others represent.

We turn first to G.H. v. Department of Children and Families, 145 So. 3d 884 (Fla. 1st DCA 2014), which involved a child who was sexually abused by an older sibling, their father not living in the home at the time. Id. at 885. The older sibling, who was adjudicated delinquent, was later returned to the home and the abuse was alleged to have resumed. Id. The Department petitioned to terminate the parental rights of both the mother and father. Id. The trial court found that "[t]his child clearly has a strong emotional bond with her parents. The Court has no doubt that it will be traumatic for her to be separated from her parents permanently," but

4

it nevertheless concluded that "the harm suffered by the separation would be less than what would occur if the child was returned to them." Id. at 886. The child's aunt was the guardian at the time and indicated a preference for a permanent guardianship rather than adoption. Nonetheless, the trial court issued a termination order. Id. On appeal, this Court reasoned that because nothing indicated that the guardianship suggested by the aunt would not protect the child, termination "was not a narrowly tailored remedy and was not the least restrictive means of protecting the child." Id. Accordingly, this Court reversed the order terminating the father's parental rights. Id.

G.H. is distinguishable from this case. The question in G.H. was whether parental termination was appropriate given the option of a permanent guardianship with the aunt. Because a permanent guardianship was available (and was preferred by the aunt), this Court reversed the order of termination, concluding that a permanent guardianship was a viable alternative to termination. No such option is available here. Moreover, unlike the situation in G.H., which involved a father who was neither the abuser nor living in the home at the time of the abuse, the children in this case were living with an abusive mother, who was hearing voices and threatened to kill herself and the children as well as abusing drugs and alcohol. No evidence suggests any path to reunification or any alternative short of termination. G.H. provides no support for precluding termination in this case.

5

Next, in <u>A.H. v. Department of Children and Families</u>, 144 So. 3d 662 (Fla. 1st DCA 2014), this Court reversed a termination order on the concession of the Department that termination of parental rights was not the least restrictive means of protecting the child from serious harm. The mother sought to regain custody of her child, who was in a permanent guardianship. The Department petitioned for a termination order, which the trial court granted finding that removal of the child from the care of the permanent guardian would be harmful and that termination was the least restrictive means to achieve permanency through adoption. On appeal, this Court reversed, explaining that a permanent guardianship is modifiable and that under "the circumstances of this case" the Department properly conceded that the status quo did not necessitate termination under the least restrictive means test.

<u>A.H.</u> does not support an inflexible rule that termination is automatically prohibited simply because some limited, irregular parental contact might be a possibility. While the court in <u>A.H.</u> noted that "there is no evidence that the mother's irregular contact posed a harm" to the child, it also noted the established principle that the "'least restrictive means test [is not] intended to preserve the parental bonds at the cost of a child's future. Instead, this test requires that 'those measures short of termination should be utilized *if such measures can permit the safe reestablishment of the parent-child bond*.'" <u>Id.</u> at 665-66 (citing <u>L.W. v. Dep't</u>

6

of Child. & Fams., 71 So. 3d 221, 224 (Fla. 4th DCA 2011) (emphasis added).

Here, no evidence suggests any possibility of reestablishment of the parent-child relationship; instead, clear and convincing evidence shows to the contrary. In specific circumstances, such as those in A.H., irregular parental contact may not harm the child and, more importantly, may lead to reunification. That is not the situation here, one in which the minimal but highly restricted parental contact at issue—whatever its purpose—has no potential for reuniting the family.[2]

---

[2] We note that emotional ties between child and parent are part of the manifest best interest analysis, see section 39.810(5), Florida Statutes ("The love, affection, and other emotional ties existing between the child and the child's parent or parents, siblings, and other relatives, and the degree of harm to the child that would arise from the termination of parental rights and duties."), and that the manifest best interests and least restrictive means prongs are distinct. See C.M. v. Dep't of Child. & Fams., 953 So. 2d 547, 551-52 (Fla. 1st DCA 2007) (clarifying "that the elements of the 'least restrictive means' test are separate from, and not to be confused with, the 'manifest best interests' test"). Whether to allow the limited type of telephonic/supervised contact at issue here pre- and post-termination is left to the discretion of the trial court. § 39.811(7)(b), Fla. Stat. (2015) ("If the court terminates parental rights, it may, as appropriate, order that the parents, siblings, or relatives of the parent whose rights are terminated be allowed to maintain some communication or contact with the child pending adoption if the best interests of the child support this continued communication or contact, except as provided in paragraph (a). If the court orders such continued communication or contact, which may include, but is not limited to, visits, letters, and cards or telephone calls, the nature and frequency of the communication or contact must be set forth in written order and may be reviewed upon motion of any party, or, for purposes of this subsection, an identified prospective adoptive parent. If a child is placed for adoption, the nature and frequency of the communication or contact must be reviewed by the court at the time the child is placed for adoption."); see also A.W. ex rel. B.W. v. Dep't of Child. & Fams., 969 So. 2d 496, 505 (Fla. 1st DCA 2007) (holding that trial court did not abuse its discretion by prohibiting mother from having post-termination visitation or contact with the child).

Similarly, in <u>C.D. v. Department of Children and Families</u>, 164 So. 3d 40 (Fla. 1st DCA 2015), this Court reversed a termination order because of inconsistencies between the guardian ad litem's assertions about the possible harm from the children's contact with their mother (i.e., that the positions taken were "diametrically opposed" to one another). The Court also noted the trial court's contradictory findings about whether a parental bond existed with the children and whether contact with the mother would not endanger them, making it improper to conclude that termination was the least restrictive means of protecting the children. Thus, under the specific circumstances presented, termination was improper.

The Court in <u>C.D.</u> specifically disclaimed that its decision could be interpreted to mean that "termination of parental rights is precluded because there is some connection or bond between the children and their mother and there may be some future supervised contact between the mother and the children." Instead, on the specific facts in that case, this Court found that the Department "failed to establish that [termination], as opposed to some other arrangement, is the least restrictive means of protecting the children from harm." In contrast, this case presents no evidence that any arrangement short of termination has any hope of providing reunification with the mother and permanency and stability for the children. Sporadic, supervised telephone calls with a dysfunctional parent who has abandoned his or her children is no substitute for the relational stability the

8

Legislature seeks for children in these dire situations. See Statewide Guardian Ad Litem Program v. A.A., 171 So. 3d 174 (Fla. 5th DCA 2015).

Neither G.H., A.H., nor C.D. bar termination in this case. To the contrary, our supreme court in Padgett made unmistakably clear that while it was "loath to sanction government interference in the sacrosanct parent-child relationship, we are more reluctant still to forsake the welfare of our youth. Florida's children are simply too important." Id. at 571. It emphasized that the least restrictive means tests requires that the Department "ordinarily must show that it has made a good faith effort to rehabilitate the parent and reunite the family, such as through a current performance agreement or other such plan for the present child." Id. In addition, the "state must show by clear and convincing evidence that reunification with the parent poses a substantial risk of significant harm to the child." Both of these requirements—the good faith effort to rehabilitate the parent with the hope of reuniting the family and the presentation of clear and convincing proof that, despite such efforts, reunification would pose a substantial risk of significant harm to the children—are met and uncontested in this case.

We note the uniformity of judicial precedent rejecting the notion that termination is impermissible under the least restrictive means test simply because some limited and highly restricted contact with a parent may pose no harm. Where clear and convincing evidence establishes the grounds for termination and that

9

termination is in the manifest best interests of the child, the least restrictive means test does not stand as an impenetrable barrier to achieving what is ultimately in the child's best interest. Padgett, 577 So. 2d at 570 (stating the "only limitation on this rule of parental privilege is that as between the parent and the child the ultimate welfare of the child itself must be controlling") (citing State ex rel. Sparks v. Reeves, 97 So. 2d 18, 20 (Fla. 1957)); see also S.M. v. Dep't of Child. & Fams., 40 Fla. L. Weekly D2592 (Fla. 4th DCA Nov. 18, 2015) ("If reunification is not possible because the father or mother cannot or will not assume responsibility as a parent to the child, as demonstrated, for example, by the repeated failure to comply with a case plan, then termination is the least restrictive means of preventing harm."); A.J. v. K.A.O., 951 So. 2d 30, 33 (Fla. 5th DCA 2007) ("Nor is the least restrictive means test intended to preserve the parental bonds at the cost of a child's future."). Simply because some possible parental contact—under very constrained and highly supervised circumstances—might exist is insufficient to bar termination. J.P. v. Dep't of Child. & Fams., 1D15-3023, 2016 WL 167394, at *4 (Fla. 1st DCA 2016) ("If we were using an 'inconceivable' test then the final judgment of termination of parental rights would fail here and in almost every case. We can speculate on what the [Department] could have done with unlimited resources or unlimited time, but that is not the least restrictive means test."); see also State v. T.S., 155 So. 3d 476, 477-78 (Fla. 1st DCA 2015) ("Simply because a

10

permanent guardianship and irregular visitation existed in *A.H.* does not mean that a trial judge must create an unsolicited permanent guardianship for the sole purpose of avoiding a least restrictive means outcome."); S.M., 40 Fla. L. Weekly D2592 ("The test is not whether, under controlled circumstances, a parent can have contact with the child and develop an emotional bond, but whether a mother or father can be a parent to the child, with all of the responsibility and care that entails."); A.A., 171 So. 3d at 177 ("It is unreasonable to prevent the children from being adopted if reunification with the parent is impossible and it is otherwise in the children's best interests, even if evidence shows that limited and supervised contact between the parent and children would not be harmful. Emphasis on whether any parent-child contact is possible misconstrues the Florida Supreme Court's rationale for the least restrictive means test.").

Based on the foregoing, we REVERSE and REMAND for further proceedings consistent with this opinion.

WETHERELL and WINOKUR, JJ., CONCUR.