# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Nos.  1D20-3022
1D20-3693

_____

A.P., mother of J.F., F.S., M.D.
and M.D., JR., minor children,

Appellant,

v.

DEPARTMENT OF CHILDREN AND
FAMILIES,

Appellee.

_____

On appeal from the Circuit Court for Alachua County.
James P. Nilon, Judge.

September 2, 2021

BILBREY, J.

A.P., the mother of four minor children, appeals two final orders entered by the trial court in this consolidated appeal from a termination of parental rights (TPR) action.  Because the trial court properly applied the governing law to the competent, substantial evidence presented, we affirm both orders.

The first order was entered on September 24, 2020, following an adjudicatory hearing spanning six days and concluding August 10, 2020.  *See* § 39.809, Fla. Stat. (2019).  That first order tracked the court's earlier oral pronouncement after the hearing which

found two statutory grounds for termination of A.P.'s parental rights and that TPR was the least restrictive means to protect all four children from additional harm. The court also found TPR was in the manifest best interests of M.D. and M.D., Jr., considering all the elements listed in section 39.810, Florida Statutes (2019).

Yet considering the greater mental health needs of J.F. and F.S., and the possibility that permanent placement could be delayed by their needs, the court found the evidence insufficient to establish that TPR was in the manifest best interests of J.F. and F.S. Accordingly, the court terminated A.P.'s parental rights as to M.D. and M.D., Jr., but denied termination as to J.F. and F.S., without prejudice to DCF to seek further proceedings. In anticipation of such additional proceedings, the trial court directed DCF to conduct additional "staffing" for J.F. and F.S.

The second order on appeal was entered after DCF's motion for rehearing following the denial of TPR as to J.F. and F.S. and following the subsequent evidentiary hearing spanning three more days on that motion. *See* Fla. R. Juv. P. 8.265. In its written order filed in November 2020, the court reiterated its findings of the statutory grounds and least restrictive means elements for TPR as to J.F. and F.S. The court also found that DCF had proved on rehearing, by clear and convincing evidence, that TPR was in these two children's manifest best interests. The trial court therefore terminated A.P.'s parental rights to J.F. and F.S. on rehearing.

In her appeal of the first order (our case number 1D20-3022), A.P. argues that the evidence was insufficient to prove either of the statutory grounds for TPR or that TPR was the least restrictive means to protect M.D. and M.D., Jr., from harm. In addition, A.P. seeks reversal of the trial court's finding TPR to be in the manifest best interests of M.D. and M.D., Jr., and the court's termination of A.P.'s parental rights to those two children.

Following rehearing, A.P. then appealed the second order (our case number 1D20-3693), asserting that the trial court failed to timely rule on DCF's motion for rehearing and thus rehearing was "deemed denied." *See* Fla. R. Juv. P. 8.265(b)(3). Failing this argument, A.P. argues that the court's order on rehearing was not supported by any "new and material evidence" as required by rule 8.265(a)(4), Florida Rules of Juvenile Procedure. She repeats her

2

challenge to the trial court's finding the two statutory grounds for TPR and that TPR was the least restrictive means to protect J.F. and F.S. Finally, A.P. challenges the court's determination on rehearing and under section 39.810 that termination of her parental rights to J.F. and F.S. was in these children's manifest best interests. We reject all of A.P.'s arguments as discussed below.

## Standard of Review

Review of evidentiary determinations in TPR cases is limited to whether there is competent, substantial evidence to support the trial court's findings. Section 39.809(1) requires that to grant TPR, the trial court must find clear and convincing evidence of:

(1) at least one of the statutory grounds for TPR;

(2) that TPR is in the children's manifest best interests;

and

(3) that TPR is the least restrictive means of protecting the children from harm.

*B.T. v. Dep't of Child. & Fams.*, 300 So. 3d 1273, 1277 (Fla. 1st DCA 2020).

A trial court's finding that the evidence is clear and convincing enjoys a presumption of correctness and will be overturned only if clearly erroneous or lacking evidentiary support. *N.L. v. Fla. Dep't of Child. & Fam. Servs.*, 843 So. 2d 996, 999 (Fla. 1st DCA 2003). The appellate court will not conduct a de novo proceeding, reweigh the testimony presented at final hearing, or substitute its judgment for that of the trier of fact. *Dep't of Child. & Fams. v. A.L.*, 307 So. 3d 978, 982–83 (Fla. 1st DCA 2020).

## Proceedings and Evidence in Common

By order entered in June 2018, all four children were taken into DCF custody (sheltered), as allowed by section 39.402(1)(a),

Florida Statutes (2018). At the time, J.F. was nine, F.S. was six, M.D. was two and a half, and M.D., Jr., was eighteen months old. The court adjudicated all four children dependent in July 2018. DCF prepared a case plan for A.P. with a primary goal of reunification and filed the plan that same month.

A.P. was evaluated by DCF providers and diagnosed with various psychological conditions relating to her substance abuse, trauma from horrific child abuse by her mother, and domestic violence by the father of M.D. and M.D., Jr. The three older children, J.F., F.S. and M.D., were also evaluated and diagnosed with post-traumatic stress disorder and other trauma and anxiety-related conditions attributed to A.P. and A.P.'s failure to protect them. The oldest two children were the most severely affected: J.F. had been involuntarily committed at least once, and F.S. suffered auditory hallucinations more than once. M.D., Jr., was too young for any diagnosis but as of the adjudicatory hearing had been in foster care placements for over half his life.

The services provided by DCF under A.P.'s case plan led to some success, and in February 2019, M.D. and M.D., Jr., were returned to A.P.'s home. Following reunification, despite one child breaking a leg and the occurrence of other concerning incidents, DCF case workers hesitated to again remove these children in the interests of stability.

J.F. and F.S. were returned to A.P.'s home some weeks later, their return delayed by their serious behavioral and mental health issues. Even though services were ongoing during this reunification, A.P. had a positive drug test in May 2019; resumed contact with the father of M.D. and M.D., Jr., in violation of the case plan and a court order; and failed to provide J.F. and F.S. with their prescribed medications. Upon DCF's emergency shelter petition, the court ordered the children returned to DCF's custody (resheltered) in June 2019.

Various counselors and other service providers continued to work with A.P. on her case plan, as slightly modified after all the children were resheltered in June 2019. A.P. had additional positive drug tests during August 2019 but maintained negative tests afterward. Yet A.P. repeatedly violated the conditions of her supervised visitation with all four children by discussing the case

4

with them; struggled to maintain her composure when the youngest child became confused about who his mother was; and discouraged the children from speaking to or trusting DCF personnel. Finally, A.P. violated the court-ordered limitations on communications in place to protect J.F. and F.S. from unsupervised contact with her and to prevent any contact between J.F. and abusive members of A.P.'s family.

DCF petitioned for termination of A.P.'s parental rights as to all four children in January 2020, eighteen months after the children were adjudicated dependent. *See* § 39.802, Fla. Stat. (2019). DCF alleged sections 39.806(1)(c) and 39.806(1)(e)1., Florida Statutes (2019), as grounds for TPR. DCF also alleged that TPR was the least restrictive means to protect the children and was in the children's manifest best interests under section 39.810.

### First Statutory Ground for TPR — § 39.806(1)(c)

The trial court found the evidence clear and convincing that A.P. engaged in conduct towards all four children showing "that the continuing involvement of the mother in the parent-child relationship threatens the life, safety, well-being, or physical, mental or emotional health" of each of the four children "irrespective of the provision of services" as set out in section 39.806(1)(c). These findings tracked the statute and are supported by competent, substantial evidence.

The evidence presented at the multi-day adjudicatory hearing included the testimony of nine witnesses for DCF and eleven witnesses for A.P., including A.P. DCF's witnesses described the psychological diagnoses of A.P. and the three eldest children; A.P.'s conduct towards the children, both individually and as a group while A.P. was subject to her case plan; and the effects of A.P.'s actions upon the children's safety, well-being, and physical, mental, and emotional health. The expert testimony was consistent that while A.P. had made progress on her case plan since the children were resheltered, a safe reunification of A.P. and the children was impossible at the time of the adjudicatory hearing. A.P.'s expert witness testified that although she had never spoken to any of the children personally, her evaluation of A.P. and review of the records in the case convinced her that with further counseling and services, a staggered reunification of A.P.

5

and the children, one by one beginning six months to a year after the hearing, could succeed.

On appeal of this finding, A.P. argues that her evidence that she had benefitted from the services provided by DCF and she would continue to improve her ability to safely parent the children with more services precluded TPR on this ground. But A.P.'s reliance on *Q.L. v. Department of Children and Families*, 280 So. 3d 107 (Fla. 4th DCA 2019), is misplaced.

In *Q.L.*, "because there was no evidence that the mother suffered from any 'condition,' the Department was required to prove that future harm to the children was likely based on her past conduct." 280 So. 3d at 114. In contrast, in this case, A.P. was diagnosed with multiple psychological conditions. The trial court had evidence that these conditions had and would continue to hinder A.P.'s ability to control her emotions; to place the children's emotional needs above her own; and to set boundaries between the children and members of A.P.'s family with histories of torturous abuse of A.P., as well as reportedly sexual abuse of J.F. and F.S.

A.P.'s contention is that her progress with her therapy outweighs DCF's evidence that her past conduct and failure to protect the children severely damaged the three older children's mental and emotional health and that the children continue to suffer from the emotional trauma inflicted by A.P. But this contention improperly requests this court to re-weigh the evidence, which we cannot do. *See J.B. v. C.S.*, 186 So. 3d 1142 (Fla. 1st DCA 2016). In addition, Florida law does not require an indefinite provision of services when a parent shows the inability to safely reunify within a reasonable time. *S.M. v. Fla. Dep't of Child. & Fams.*, 202 So. 3d 769, 782 (Fla. 2016). A.P. fails to demonstrate a deficiency in the evidence to support the trial court's finding the ground for TPR under section 39.806(1)(c) for all four children, based on A.P.'s conduct towards each of them over the course of these proceedings.

### Second Statutory Ground for TPR — § 39.806(1)(e)1.

The trial court also found the ground for TPR alleged by DCF under section 39.806(1)(e)1. — that A.P. "failed to substantially comply for a period of twelve months with the Case Plan after the

6

shelter of the children or the adjudication of the minor children, to the degree that further reunification efforts are without merit and not in the best interest of" all four children. The court detailed in the first order the specific testimony it relied in finding this statutory ground for TPR proven as to all four children.

On appeal, A.P. argues that she had substantially complied with her case plan, with only minor incidents of bad judgment after the reshelter. She attributes the expiration of time for compliance with her case plan to traumatic events in her life beyond her control and by DCF's scheduling of her trauma counseling only after her drug abuse had been addressed.

Section 39.806(1)(e)1. provides that a parent's failure to complete a case plan within twelve months constitutes evidence of continuing abuse unless the failure is caused by the parent's poverty or DCF's failure to make reasonable efforts to reunify the parent and children. At the time of the hearing, two years had passed since A.P.'s initial reunification case plan was filed. There was no evidence that A.P.'s positive drug tests, misbehavior during supervised visits with the children, violation of contact limitations to protect J.F. and F.S., and other acts detailed in the trial court's order were caused by poverty or any deficiency in DCF's efforts to reunify the family.

Time is of the essence for permanency of the children. *See, e.g.*, § 39.001(1)(h), Fla. Stat. (2019) (policy to ensure that no child remains in foster care" more than a year); *F.C. v. Dep't of Child. & Fams.*, 315 So. 3d 110, 111 (Fla. 3rd DCA 2020) (affirming TPR upon evidence that father failed to substantially comply with case plan after twelve months). A.P.'s position that the children should remain in limbo even longer because of her somewhat improved situation is against public policy and not in the children's best interests. *See S.M.*, 202 So. 3d at 782 (holding that "there is a strong policy incentive in achieving permanency for children in care as quickly as possible" and that permanency should not be indefinitely delayed).

A.P. fails to demonstrate the lack of clear and substantial evidence to support the trial court's finding section 39.806(1)(e)1. as a ground for TPR for all four children based on A.P.'s failure to substantially and timely comply with her case plan.

## TPR as Least Restrictive Means

The trial court found by clear and convincing evidence that TPR was the least restrictive means to protect all four children, applying the Florida Supreme Court's holding in *S.M.* The trial court noted that "time is of the essence and preservation of the parental bond shall not be at the cost of a child's future" in finding that A.P. had completed many services but "has not complied to the extent necessary." The evidence was undisputed that two years had passed since the children were first sheltered and that A.P.'s actions led to the resheltering of the children.

Furthermore, no witness testified that the children could currently be safely reunified with A.P. A.P.'s proposed less restrictive means was to continue the children in foster care even longer, while she availed herself of additional therapy and other services for an unspecified period. But this proposal ignored all four children's need for permanency and long-term stability. The older children's serious mental health issues caused by A.P.'s actions and the stress of uncertainty in their situations shows why public policy favors permanence and security for the children. *See* §§ 39.001(1)(h), 39.0136, Fla. Stat. (2019).

As we stated, in *Department of Children & Families v. B.C.*, 185 So. 3d 716, 720 (Fla. 1st DCA 2016), the least restrictive means test does not "stand as an impenetrable barrier to achieving what is ultimately in the child's best interest." Further, the "test is not intended to preserve the parental bonds at the cost of a child's future." *Id.* (citations omitted). And speculation of what the Department "could have done with unlimited resources or unlimited time" is not the least restrictive means test. *J.P. v. Dep't of Child. & Fams.*, 183 So. 3d 1198, 1205 n.8.

Here, the trial court's finding that termination of A.P.'s parental rights the least restrictive means of protecting the children correctly balanced A.P.'s due process rights and the public policy in favor of permanency for the children in the dependency system. A.P. shows no deficiency in the evidence to support the trial court's finding.

8

**Manifest Best Interests of M.D. and M.D., Jr**.

Turning to the manifest best interests of M.D. and M.D., Jr., the trial court made particular findings under each statutory factor listed in section 39.810(1)–(11) in the first order on appeal. Weighing the statutory facts, the court found the evidence clear and convincing that TPR was in the manifest best interests of both M.D. and M.D., Jr. A.P. does not challenge any specific factor on appeal but argues that the court improperly considered A.P.'s ability to parent all four children rather than limiting its determination to A.P.'s ability to parent M.D. and M.D., Jr., individually.

Contrary to A.P.'s position, the trial court did not base its findings of M.D.'s and M.D., Jr.'s manifest best interests on the mental health needs or potential difficulty placing J.F. or F.S. The trial court discussed each of the statutory factors referring only to M.D. and M.D., Jr., not the older children. The court recognized that M.D. and M.D., Jr., had been placed together but not with the older children "in five separate placements" while the case was pending. The court clearly stated in its order that J.F. and F.S. "are in a different position than" M.D. and M.D., Jr. The record simply fails to support A.P.'s position that the trial court's determination of M.D. and M.D., Jr.'s manifest best interests improperly rested on evidence pertaining to J.F. and F.S.

## Proceedings on Rehearing as to J.F. and F.S.

A.P. claims that the trial court erred in granting rehearing as to the issue of J.F.'s and F.S.'s manifest best interests. She bases this claim first on the trial court not ruling on the motion for rehearing within ten days of its filing resulting in the motion being "deemed denied." Fla. R. Juv. P. 8.265(b)(3). A.P. also argues that rehearing was improper since DCF did not present "new and material evidence" such that rehearing could have been granted. Fla. R. Juv. P. 8.265(a)(4).

As noted above, in the September 24, 2020, order following the first adjudicatory hearing, the trial court found the evidence insufficient to prove that TPR was in J.F.'s and F.S.'s manifest best interests. DCF's motion for rehearing was filed on September 14,

2020, after the court's oral pronouncement but ten days before the written order was entered.[1]

The day after the motion for rehearing was filed, the trial court considered several motions including DCF's motion for rehearing. While A.P. objected to DCF's motion for rehearing as untimely filed, she did not request an immediate ruling on the motion. At this hearing, the court did not specifically articulate that rehearing was granted or denied, but the court and the parties continued to proceed as if rehearing had been granted. The court coordinated dates with the parties for the court to hear additional testimony on the manifest best interests issue.

When the court reconvened on September 25, 2020, the court announced that DCF's motion for rehearing was granted "only as it applies to the manifest best interests" of J.F. and F.S. *See* Fla. R. Juv. P. 8.265(c)(1) (stating that rehearing may be granted to all or any of the parties on all or any of the issues; orders granting rehearing must state specific issues to be reheard). A.P. objected, arguing, as she argues here, that none of the evidence would be "new and material" as required by rule 8.265(a)(4). However, A.P. did not assert that the motion for rehearing was deemed denied at this point under rule 8.265(b)(3). After the court instructed DCF to limit the evidence to matters occurring "since the conclusion of the trial," DCF presented the testimony of its witnesses on rehearing over several days.

A.P. fully participated in the rehearing and presented her expert witness' testimony on the second day of the hearing. DCF offered rebuttal with the testimony of two more witnesses on the third hearing date. At the end of the evidence the court orally pronounced its ruling on rehearing — finding TPR in the manifest best interests of J.F. and F.S. and terminating A.P.'s parental

---

[1] Although it may seem unusual to file a motion for rehearing before a written order has been entered, this appears to be allowed under rule 8.265(b)(1). Rule 8.265(b)(1) permits a motion for rehearing as soon as "immediately after the court announces its judgment" and requires such a motion to be "within 10 days of the entry of the order." Regardless, that aspect of the motion for rehearing is not challenged here.

rights to these children. That oral pronouncement was later reduced to writing.

A.P. then moved to vacate the court's order granting DCF's motion for rehearing and terminating her parental rights as to J.F. and F.S. *See* Fla. R. Juv. P. 8.270. In that motion A.P. asserted for the first time that the September 25th order was not timely entered under rule 8.265(b)(3). She therefore claimed that it was procedurally denied before the court took any evidence or rendered its order on the merits on rehearing. A.P.'s motion to vacate was denied based on the court's finding that it had "effectively granted" rehearing on September 15th during the scheduling conference setting the matter for further proceedings. A.P. then timely filed her notice of appeal of the order granting rehearing and terminating her parental rights as to J.F. and F.S.

A.P.'s claim that DCF's motion for rehearing was deemed denied under rule 8.265(b)(3) was not preserved. *See G.M. v. Dep't of Child. & Fams.*, 969 So. 2d 569, 571 (Fla. 1st DCA 2007) (holding "possible defects in the procedural posture" of a case are "waived and not preserved" if not "argued below").[2] But even if this issue was preserved for appellate review by A.P.'s motion to vacate, A.P. fails to establish that reversal is required.

DCF's written motion for rehearing was considered by the trial court the day after it was filed. As mentioned, the parties and the court proceeded as if the motion was granted by setting time for further testimony. A.P. fully participated with counsel and with her own witness in the hearings on rehearing, so there is no question that she was afforded due process. Any error by the trial court in failing to explicitly announce on the record on September 15th that partial rehearing was granted on the limited issue of the manifest best interests of J.F. and F.S. was harmless since it was clear to all parties that further proceedings were going to occur.

[2] We also note that since no appeal had been filed when the trial court explicitly granted rehearing on September 25, 2020, there is no issue of the trial court lacking jurisdiction when that order was entered. It therefore cannot be the case that the order granting rehearing or the subsequent second order, now on appeal, was void. *See* Fla. R. Juv. P. 8.270(b)(4).

*See D.M. v. Dep't Child. & Fam. Servs.*, 979 So. 2d 1007, 1010 (Fla. 3d DCA 2008) (applying harmless error in an appeal following TPR).

A.P. also challenges the order on rehearing as unsupported by "new and material evidence" as described in rule 8.265(a)(4). A.P. contends that DCF could have discovered this evidence before and produced it at the adjudicatory hearing prior to the first order. The record refutes A.P.'s claim. After complying with the court's direction to conduct additional "staffing" for J.F. and F.S., DCF presented testimony on rehearing by five witnesses who described J.F.'s and F.S.'s behaviors, mental states, and emotional conditions after the adjudicatory hearing in early August 2020. The evidence presented and considered by the trial court was new and material as to these children's manifest best interests.

A.P. fails to establish reversible error in the timing of the court's order on rehearing or the "new and material" character of the evidence to support it under rule 8.265.

### Manifest Best Interests of J.F. and F.S.

Finally, A.P. appeals the trial court's determination of the manifest best interests of J.F. and F.S. in the order entered November 23, 2020. But A.P. does not contest specific statutory factors addressed by the trial court under section 39.810, Florida Statutes. Rather, A.P. argues generally that she will bond with these children more closely than any adoptive parent could, that these children's mental and emotional special needs will make placement difficult and possibly delay placement, and that A.P.'s ability to support the children has financially improved and stabilized since the children were resheltered.

The trial court's order on rehearing included detailed findings of the manifest best interests factors for J.F. and F.S. under section 39.810(1)–(11). The court specified the evidence it relied on for each factor and assigned weight and credibility to conflicting evidence received on rehearing. Although she does not refer to the subsections of the statute in her briefs, A.P.'s arguments relate to factors (2) ("ability and disposition of parent or parents to provide child with food, clothing, medical care . . . and other material needs"); (3) ("capacity of parent or parents to care for child to

extent child's safety, well-being, and physical, mental, and emotional health will not be endangered upon child's return home"); (5) ("love, affection, and other emotional ties between child and parent or parents, siblings, and other relatives, and the degree of harm to the child from termination of parental rights"); (6) ("likelihood of an older child remaining in long-term foster care upon [TPR], due to emotional or behavioral problems"); and (7) ("likelihood that the child will enter into a more stable and permanent family relationship as a result of" TPR).

Here, A.P. essentially repeats her request that this court reweigh the evidence on the statutory factors and decide these factors contrary to what was found by the trial court. She asks that we find that her improved circumstances after years of services should outweigh the other statutory factors the trial court relied on, including the public policy favoring permanency and stability for dependent children. As discussed above, this we cannot not do. *See also Dep't of Child. & Fams. v. A.L.*, 307 So. 3d 978, 982–83 (Fla. 1st DCA 2020).

A.P. establishes no deficiency in the evidence to support the trial court's determination of the manifest best interests of J.F. and F.S. upon evaluation of the statutory factors listed in section 39.810 and as expressed in the written order on rehearing. Our review of the record on appeal, including the transcripts of the rehearing proceedings, revealed competent, substantial evidence to support the trial court's determinations of the manifest best interests of J.F. and F.S.

## Conclusion

A.P. demonstrates no deficiency in the evidence supporting the trial court's finding grounds for termination of A.P.'s parental rights as to all four children, under sections 39.806(1)(c) and 39.806(1)(e)1. Likewise, A.P. establishes no error in the trial court's finding that TPR is the least restrictive means to protect all four children under the circumstances of this case, and that TPR is in the manifest best interests of M.D. and M.D., Jr., under section 39.810, Florida Statutes. In addition, in her second appeal, A.P. fails to establish reversible error in the trial court's grant of rehearing, under rule 8.265, and fails to demonstrate a deficiency in the evidence to support the trial court's determination of the

13

manifest best interests of J.F. and F.S. upon rehearing. For these reasons, the orders on appeal are

AFFIRMED.

LEWIS and MAKAR, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Melissa Joy Ford, Assistant Conflict Counsel, and Michael Titus, Assistant Conflict Counsel, Office of Criminal Conflict and Civil Regional Counsel Region One, Tallahassee, for Appellant.

Ward L. Metzger, Department of Children and Families, Jacksonville, for Appellee.

Thomasina F. Moore, Statewide Director of Appeals, and Laura J. Lee, Senior Attorney, Appellate Division, Statewide Guardian ad Litem Office, Tallahassee, for Appellee.